UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
FILE NO.:

| | | |
|---|---|---|
| DILLON RANDALL LEDFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF SPRUCE PINE; KASEY COOK, | ) | **COMPLAINT** |
| in his individual and official capacity as | ) | **(JURY TRIAL DEMANDED)** |
| Police Chief for the Spruce Pine Police | ) | |
| Department; MICHAEL KEITH | ) | |
| HOLLIFIELD, in his individual capacity; | ) | |
| MICHAEL ETHAN SALE, in his individual | ) | |
| capacity; and DALTON HUNTER MACE, | ) | |
| in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

NOW COMES the Plaintiff, Dillon Randall Ledford, by and through counsel, and states the following Claims for Relief against Defendants.

The conduct of the individual police officers, their supervisors, and the Town of Spruce Pine violated the Plaintiff's constitutional rights, as well as federal and state law. Defendant Kasey Cook ("Cook"), the Police Chief for the Town of Spruce Pine Police Department, is sued in both his official and individual capacities. Defendants Michael Keith Hollifield, Michael Ethan Sale, and Dalton Hunter Mace (collectively, "Defendant-Officers") are being sued in their individual capacities only.

## Introduction

1.  This action arises out of an interaction between the Plaintiff and the Spruce Pine Police Department and the Defendant-Officers acting within the course and scope of their duties.

1

2. During this interaction, Plaintiff was suffering a severe episode of diabetic shock, which should have been apparent to the Defendant-Officers. At no time did the Plaintiff pose a threat to the Defendant-Officers or the public generally. The Defendant-Officers should have provided Plaintiff with medical assistance. Instead, the Defendant-Officers struck, tased, and unlawfully arrested Plaintiff. They then charged him with crimes, even though he had done nothing wrong.

3. The Town of Spruce Pine and Defendant Cook, as the final policymaker for Spruce Pine and its Police Department, failed to have proper policies or training and oversight of its police officers, and the Defendant-Officers in particular, that resulted in Plaintiff's injuries.

4. The Defendants' conduct violated the Plaintiff's rights under both federal and state law.

5. Plaintiff is entitled to recover damages from the Defendants for his injuries, including but not limited to physical injuries, mental injuries, emotional injuries, reputational damage, and compensation for violation of his state and federal rights.

## Parties and Jurisdiction

6. Plaintiff Dillon Randall Ledford ("Plaintiff") is a citizen and resident of Marion, McDowell County, North Carolina.

7. Plaintiff has been a K-9 officer with the North Carolina Department of Adult Corrections for approximately three years. Until the events at issue in this lawsuit occurred, Plaintiff had a reputation as a professional and law-abiding law enforcement officer.

8. Defendant Town of Spruce Pine ("Defendant Spruce Pine" or "Spruce Pine") is a town located in Mitchell County, North Carolina, and is a political subdivision of the State of North Carolina, organized and governed by the laws of the State of North Carolina.

9. The Town of Spruce Pine is governed by a Town Council, which is made up of five popularly elected members.

10. The Spruce Pine Police Department ("Police Department") is a department of the Town of Spruce Pine.

11. The Police Department is a law enforcement agency organized under the laws of the State of North Carolina and operated pursuant to applicable state and federal law by Spruce Pine; Its activities and operations are carried out by law enforcement officers who are agents and employees of Spruce Pine.

2

12.     Spruce Pine, through its Police Chief Defendant Cook, is charged with enacting and enforcing policies, procedures, protocols, and customs to ensure its police officers are competent and properly trained to carry out their duties.

13.     Defendant Spruce Pine had statutory authority to appoint and did appoint Defendant Cook as the Chief of Police for the Police Department.

14.     Defendant Kasey Cook ("Defendant Cook" or "Cook") is the Police Chief of the Police Department and a citizen and resident of Mitchell County, North Carolina.

15.     Defendant Cook holds a public office created by state statute whereby he exercises a position of power, discretion, authority, and control, as allowed and set forth in state law, over his department and the department's officers/employees.

16.     Defendant Cook was appointed by, and is subject to removal by, Defendant Spruce Pine's Town Council.

17.     Defendant Cook is the official final policymaker for the Police Department and Spruce Pine.

18.     Defendant Cook is a public officer as defined by law.

19.     Defendant Michael Keith Hollifield ("Defendant Hollifield" or "Hollifield") was at all relevant times a police officer for the Police Department with the rank of captain and a citizen and resident of Mitchell County, North Carolina.

20.     Defendant Michael Ethan Sale ("Defendant Sale" or "Sale") was at all relevant times a police officer for the Police Department and a citizen and resident of North Carolina.

21.     Defendant Dalton Hunter Mace ("Defendant Mace" or "Mace") was at all relevant times a police officer for the Police Department and citizen and resident of North Carolina.

22.     Defendants Cook, Hollifield, Sale, and Mace are sworn law enforcement officers, peace officers, state actors, public officers, and public officials as set out in state statute and federal law.

23.     Defendants Cook, Hollifield, Sale, and Mace are public officials for Spruce Pine by virtue of their employment, authority, responsibility, and service for the Police Department.

24.     At all times relevant, Defendants Cook, Hollifield, Sale, and Mace were acting in the course and scope of their employment as agents and employees of Spruce Pine and were government actors as it relates to the allegations set forth in this Complaint.

3

25.     Defendants Cook, Hollifield, Sale, and Mace exercised personal and professional discretion, deliberation, decision-making, and judgment as set forth in this Complaint.

26.     Defendants Cook, Hollifield, Sale, and Mace (collectively, the "individual Defendants") are certified by the North Carolina Criminal Justice Education & Training Standards Commission ("Training Standards Commission") and attended and received the NC Basic Law Enforcement Training ("BLET") Certification.

   a.   Each individual Defendant is governed by the rules, standards, laws, training and policies required and set forth by the North Carolina Training Standards Commission.

   b.   Each individual Defendant attends in-service training as required by the North Carolina Training Standards Commission on an annual basis and has certificates and records of their attendance.

   c.   Each individual Defendant is required to abide by, comply with, follow and adhere to, all training, law, custom, practice, and standards provided to them in their in-service training.

   d.   Each individual Defendant is an experienced law enforcement officer with several years of field experience, training, and exposure to current legal events affecting and involving law enforcement officers.

27.     The unlawful acts and omissions that are the subject of this Complaint took place in Mitchell County, North Carolina.

28.     This Complaint alleges causes of action that arise under federal and state law, including but not limited to, the United States Constitution and 42 U.S.C. § 1983. This Court has subject-matter jurisdiction pursuant to U.S. Constitution, Article III, Section 2 and 28 U.S.C. §§ 1331, 1343, and 1367.

29.     Venue is proper in the Western District of North Carolina, Asheville Division, pursuant to 28 U.S.C. § 1391.

30.     Defendants are not entitled to absolute or governmental immunity because, *inter alia*, their actions and failures to act, violated the Plaintiff's constitutional rights and were done with deliberate indifference to the safety, welfare, and protection of his well-being and as such, shocks the conscience.

31.     Alternatively, all of the Defendants have waived any governmental immunity that may have arguably applied, pursuant to the N.C. General Statutes by the purchase of insurance and/or participation in a North Carolina approved Risk Management Pool, which provides coverage for the acts and omissions alleged against them.

4

## Factual Allegations

### *Plaintiff Experiences a Medical Emergency on February 16, 2024*

32.     Plaintiff was diagnosed with Type I diabetes when he was approximately 9 years old. Plaintiff has been living with this condition for approximately twenty-one (21) years and must monitor his blood sugar levels.

33.     When his blood sugar levels get low, Plaintiff must eat and or drink fluids, to avoid going into a diabetic coma.

34.     During the afternoon of February 16, 2024, Plaintiff was driving along Halltown Road in Spruce Pine, North Carolina.

35.     Plaintiff was returning to Mitchell County after visiting his girlfriend, Leslie McIntosh.

36.     Plaintiff was driving a yellow 2004 Mini Cooper automobile that belonged to Ms. McIntosh (his now wife).

37.     Plaintiff stopped at a Walmart Supercenter, located at 2514 Halltown Road, Spruce Pine, North Carolina ("Walmart") to get something to eat because he was experiencing an extreme drop in his blood sugar.

38.     Plaintiff parked the car in the online order area of the parking lot of Walmart at approximately 8:10 p.m.

39.     Plaintiff exited the vehicle at approximately 8:12 p.m. and entered Walmart.

40.     Plaintiff exited Walmart at approximately 8:20 p.m. returned to the vehicle, and sat in the driver's seat.

41.     The vehicle remained parked with the engine off.

42.     Plaintiff's condition worsened and he began experiencing diabetic shock.

     a.  Diabetic shock is a state of severe low blood sugar, known as hypoglycemia.

     b.  Diabetic shock is a health and medical emergency and can lead to a diabetic coma, seizures, or death without treatment.

     c.  Symptoms of diabetic shock include blurry or double vision, headache, sweating, slurred speech, difficulty or inability to speak, dizziness, shaking, convulsions or jerky movements, feelings of anxiety or panic, confusion, drowsiness, and loss of consciousness.

5

43. Unbeknownst to Plaintiff at the time, he began to experience symptoms of diabetic shock when he arrived at Walmart. In particular:

    a. Plaintiff does not remember leaving or returning to his vehicle at Walmart.

    b. Plaintiff unknowingly walked through Walmart and returned to his car.

    c. Plaintiff was unable to ask for or call for help using his telephone, signal for help to anyone in the nearby vicinity, or otherwise move or aid himself due to the diabetic shock.

44. Plaintiff remained unresponsive in diabetic shock and continued sitting in the driver's seat of the vehicle in the parking lot of Walmart for more than 30 minutes.

45. After some period of time, a Walmart employee noticed the Plaintiff sitting in the vehicle in the parking lot.

46. The Walmart employee approached the vehicle and attempted to communicate with the Plaintiff.

    a. The employee asked Plaintiff if he had a pick-up order and he said that he did.

    b. The employee asked Plaintiff what name the order was under, and he uttered "McIntosh."

    c. When the employee was unable to find an order under that name and asked Plaintiff if it might be under a different name, Plaintiff was only able to respond by saying "um."

47. The Walmart employee left the vehicle area and alerted a store supervisor.

48. The Walmart supervisor again attempted to communicate with the Plaintiff at approximately 8:58 p.m., but the Plaintiff was still unable to communicate.

    a. The supervisor observed that the Plaintiff's eyes were "big" and "buggy" and that he was "twitching" and unable to speak.

    b. The supervisor asked the Plaintiff to move his car from the online order area of the parking lot, but Plaintiff was physically unable to move himself or the vehicle.

49. Walmart employees did not render first aid, touch, or physically disturb the Plaintiff in any way.

50. Instead, the Walmart supervisor contacted 911 emergency services at approximately 9:00 p.m. to request a welfare check on the Plaintiff based on the supervisor's observations of the Plaintiff.

6

## *Police Officers Come to the Scene*

51.     The Police Department responded to the 911 call requesting a "welfare check" and went to Walmart.

52.     At the time the police arrived, Plaintiff had received no medical assistance.

53.     Plaintiff remained in a state of diabetic shock and was non-verbal.

54.     Neither the Defendant-Officers nor the Police Department called for or requested Emergency Services or the Fire Department respond to assess or assist with the Plaintiff's medical condition.

55.     Neither Emergency Services nor the Fire Department were present when the officers from the Spruce Pine Police Department arrived at Walmart.

56.     Defendant Sale and Defendant Mace were the first officers to arrive at Walmart at approximately 9:10 p.m.

57.     Defendants Sale and Mace were on duty for the Spruce Pine Police Department, wearing police uniforms, and arrived in Police Department vehicles.

58.     Upon arrival, Defendants Sale and Mace approached the vehicle in which the Plaintiff was located.

59.     Defendant Sale approached the driver's side of the vehicle while Defendant Mace approached the passenger side of the vehicle.

60.     Plaintiff was still experiencing diabetic shock when Defendants Sale and Mace arrived and approached the vehicle.

61.     Defendant Sale observed the Plaintiff sitting in the driver's seat of the vehicle.

62.     The driver's side window was still down, such that Sale was able to clearly see Plaintiff.

63.     Defendant Sale did not call for medical assistance or render medical assistance to the Plaintiff.

64.     Defendant Mace observed the Plaintiff from the passenger side of the vehicle.

65.     Defendant Mace did not call for medical assistance or render medical assistance to Plaintiff.

66.     Defendants Sale and Mace identified themselves as law enforcement officers.

7

67. At the time Defendants Sale and Mace identified themselves, the Plaintiff was in diabetic shock.

68. Defendant Sale attempted to communicate with the Plaintiff, but the Plaintiff's diabetic shock made communication impossible.

69. Plaintiff remained unable to speak due to his diabetic shock.

70. Defendant Sale requested that the Plaintiff provide identification.

71. As a result of the diabetic shock, Plaintiff was not able to provide identification or answer questions from Defendant Sale or Defendant Mace.

72. Plaintiff remained unable to move himself from the driver's seat of the vehicle.

73. Defendant Hollifield arrived at Walmart at approximately 9:12 p.m.

74. Defendant Hollifield was on duty for the Spruce Pine Police Department and wearing a police uniform.

75. Defendant Hollifield parked the vehicle that he was driving at the rear of the vehicle in which Plaintiff was located.

76. Defendant Hollifield's vehicle blocked the Plaintiff's vehicle from being able to exit the area.

77. Defendant Hollifield also approached the driver's side of the vehicle, joining Defendants Sale and Mace.

78. Defendant Hollifield attempted to communicate with the Plaintiff, but the Plaintiff remained unable to respond.

79. Defendant Hollifield entered Walmart while Defendants Sale and Mace remained at Plaintiff's vehicle.

80. While inside Walmart, Defendant Hollifield spoke with Walmart employees.

81. While Defendant Hollifield was speaking to Walmart employees, Defendants Sale and Mace continued to attempt communication with the Plaintiff, but Plaintiff was still not able to move or communicate.

82. Defendants Hollifield, Sale, and Mace knew or should have known the Plaintiff was in medical distress based on the lack of communication and their observations of Plaintiff's physical condition.

8

83.    At all times relevant, each Defendant-Officer was able to render medical assistance to the Plaintiff, but chose not to do so.

84.    At all times relevant, each Defendant-Officer was able to call for medical assistance for the Plaintiff, but chose not to do so.

85.    Defendant Sale began shining his flashlight into Plaintiff's face.

86.    Plaintiff did not react to the light.

87.    Defendant Hollifield exited Walmart and returned to the vehicle, rejoining Defendants Sale and Mace.

88.    Upon information and belief, Defendant Hollifield told the Plaintiff that he was being placed under arrest for trespassing and instructed him to exit the vehicle.

89.    Plaintiff remained unresponsive due to his diabetic shock and was unable to move or communicate.

90.    Plaintiff was unable to comply with Defendant Hollifield's request that Plaintiff exit the vehicle.

91.    At no time did the Plaintiff create a dangerous situation or place any officer or member of the public in danger.

92.    At no time was any defendant officer in fear of harm or danger to himself or others.

93.    Several minutes passed prior to the Defendant officers arriving on scene and direct physical contact with the plaintiff.

### ***Defendant-Officers Use Excessive Force on Plaintiff and Unlawfully Arrest Him***

94.    Defendant Hollifield pulled up his pants, walked to his vehicle, and put on his gloves.

   a.  He then calmly walked back to the Plaintiff's driver's side door without showing any fear, alarm, or cause to believe he, the other Defendant-Officers, or any member of the public were in danger or harm's way.

   b.  Defendant Hollifield, without fear or concern for his safety, the safety of his fellow officers or any safety to the general public, casually tossed up his hands and arms.

95.    Defendant Hollifield calmly opened the driver's side door of Plaintiff's vehicle and attempted to physically remove the Plaintiff from the vehicle.

96.     Defendants Sale and Mace began assisting Defendant Hollifield in physically removing Plaintiff from the vehicle.

97.     Defendants Hollifield, Sale, and Mace, in a three-on-one assault, forcibly removed the Plaintiff from the vehicle and threw him to the ground at the driver's side of the vehicle.

98.     Defendants Hollifield, Sale, and Mace, in a three-on-one assault, demanded that Plaintiff place his hands behind his back, a command that Plaintiff was unable to comply with due to his diabetic shock.

99.     Defendant Sale, with force to inflict pain and harm, struck the Plaintiff at least eleven (11) times while he was on the ground.  These strikes caused the Plaintiff great pain and brusing.

100.    Defendant Sale struck Plaintiff with a closed fist from a standing position while the Plaintiff was on the ground and restrained by Defendants Mace and Hollifield.

101.    Defendant Hollifield tased the Plaintiff by using the taser in "drive stun" mode.

102.    "Drive stun" mode is the use of a taser by pressing it against an individual's body, which is different than using a taser in "dart mode," which involves shooting darts, probes, or electrodes to electrocute the victim from afar.

        a.   Unlike "dart mode," using a taser in "drive stun" mode does not override the target's central nervous system and is instead used to inflict severe pain.

        b.   Drive stun may be used multiple times against and individual without reloading a dart cartridge.

103.    Defendant Hollifield tasered Plaintiff while he was on the ground and restrained by Defendants Sale and Mace.

104.    Defendant Hollifield then tased Plaintiff a second time in "drive stun" mode, again while he was on the ground and restrained by Defendants Sale and Mace.

105.    In a three-on-one assault, Defendants Hollifield, Sale, and Mace forced Plaintiff onto his stomach, forced his hands behind his back, and placed the Plaintiff in handcuffs.

106.    Defendants Hollifield, Sale, and Mace searched the vehicle and did not find drugs, alcohol, weapons, or anything that could pose a threat to their safety.

107.    At no point in time did the Plaintiff pose a threat to the safety of the Defendant-Officers or others.

10

108. At no point in time did the Plaintiff behave combatively, engage in assaulting a single officer, or pose a danger to either an officer or member of the public.

109. At no point in time was the Plaintiff able to actively resist or evade arrest by flight.

110. Defendants Hollifield, Sale, and Mace forcefully lifted Plaintiff from the ground while in handcuffs behind his back.

111. Plaintiff was unsteady, lacked the ability to stand or walk on his own, and required Defendants' assistance to remain standing.

112. Defendants forcefully placed Plaintiff in the back of a Police Department vehicle.

113. At no time during this use of force by Defendants Hollifield, Sale, and Mace did Plaintiff resist, obstruct, defend, attack, fight, harm, or otherwise pose a threat to the Defendant-Officers or the public.

114. At no time during these events was the Plaintiff in possession of a weapon, or under the influence of or impaired by drugs or alcohol.

115. Plaintiff did not verbally threaten Defendants Hollifield, Mace, or Sale.

116. These events caused the Plaintiff great pain and damage to him physically.

117. Defendants Hollifield, Sale, and Mace did not request or attempt to render first aid/medical assistance to the Plaintiff prior to taking him to the Spruce Pine Police Department.

118. All Defendant-Officers chose to engage in the beating, tasing, and unlawful treatment of the Plaintiff in violation of their training, applicable law, current best practices and traditions, and common sense.

119. The entire interaction between Plaintiff and Defendants Hollifield, Sale, and Mace was captured in a 49-minute surveillance video obtained from Walmart.

120. The contents of that video are incorporated by reference and are available for viewing by the Court and the parties.

### *Police Officers Take Plaintiff to Police Station, Not a Hospital*

121. Plaintiff was transported to the Police Department building at 193 Valley Road, Spruce Pine, North Carolina ("Police Building").

122. Plaintiff was forcefully removed from the patrol vehicle and was taken inside the Police Building.

11

123. While groggy and in pain, the Plaintiff informed his transporting officer he was diabetic and needed food.

    a. Upon being notified, the officer brought the Plaintiff a pack of crackers and a Mountain Dew soft drink.

    b. At no time after being notified that Plaintiff is diabetic did any of the Officer-Defendants provide or obtain medical assistance for the Plaintiff.

124. After being given a small amount of food and/or soda, the Plaintiff slowly regained the ability to speak and control his bodily movements.

125. Plaintiff's vehicle was removed from the Walmart parking lot by a towing company after the Plaintiff was taken to the Police Building.

126. After Plaintiff was released from custody, he went to the hospital and was treated for his injuries, which included scrapes, abrasions, and bruises.

127. The following week, Plaintiff was seen by his primary care physician to further evaluate and treat his injuries.

114. As a result of his interaction with Defendant-Officers, Plaintiff experienced symptoms of post-traumatic stress disorder, including nightmares.

115. Plaintiff was treated by a psychologist for emotional and mental injuries.

### *Plaintiff Is Charged with Crimes; Charges Later Dismissed*

115. Plaintiff was unlawfully charged with one count of Second-Degree Trespassing (Mitchell County 24-CR-236225) and three counts of Resisting a Public Officer (Mitchell County 24-CR-236243).

116. Plaintiff made bond and was released from police custody.

117. The elected District Attorney called for a North Carolina SBI investigation after learning about the facts and circumstances involving Plaintiff.

118. Approximately eight months later, the charges against the Plaintiff were dismissed after the elected District Attorney and his staff reviewed the SBI file, video, facts and circumstances surrounding the incident.

119. During those eight months, the Plaintiff was unable to obtain new employment with other law enforcement agencies due to these charges remaining on his record.

120. The Defendants had no lawful factual basis or lawful reason to charge the Plaintiff.

121. As a result of the criminal charges, the Plaintiff underwent an internal affairs investigation by the NC Department of Corrections.

122. The Defendant-Officers' conduct in charging the Plaintiff harmed the Plaintiff's reputation, both personally and professionally.

123. By improperly charging the Plaintiff, the Defendant-Officers caused the Plaintiff emotional and mental harm and suffering.

124. Upon information and belief, at no time prior to the District Attorney dismissing the charges did a single Defendant request that the charges be dismissed.

125. At no time prior to the filing of this Complaint have the Defendants attempted to remedy their conduct towards Plaintiff.

### *Reputational Damage to Plaintiff*

126. Plaintiff's personal and professional reputation as a law enforcement officer has been harmed by the criminal charges improperly brought against him by the Defendants.

127. Plaintiff's name, picture, and criminal charges were published to the community in public records and in local periodicals known as "Fuzzbusters."

128. Due to this publication, Plaintiff was portrayed as a criminal – a portrayal that harmed his professional and personal reputation.

129. The Defendant-Officers entered Plaintiff's name into CJLEADS or caused an employee of the Spruce Pine Police Department to do so.

130. CJLEADS is a secure, centralized database of comprehensive, up-to-date information about offenders for use by state and federal government criminal justice professionals, including law enforcement agencies throughout North Carolina.

131. Information about Plaintiff in CJLEADS specified that he had resisted and/or assaulted law enforcement officers and that law enforcement officials should proceed with caution if they encountered Plaintiff.

132. Plaintiff's inclusion in CJLEADS as an offender harmed his reputation within the law enforcement community.

133. In October 2024, Plaintiff applied for employment with the Burke County Sheriff's Department, but was turned down as a direct result of Plaintiff's inclusion in CJLEADS.

134. In addition, Walmart banned Plaintiff from being on its property upon threat of criminal prosecution. Plaintiff remains banned to this day.

135.    As a result of Defendants' actions and violation of Plaintiff's rights, Plaintiff has suffered damages, including but not limited to, medical expenses, pain and suffering, mental and emotional injuries, and damage to reputation.

### *Neither Defendant Spruce Pine Nor Defendant Cook Investigated or Disciplined the Defendant-Officers*

136.    Defendant Cook and Defendant Spruce Pine were informed and made aware of the February 16 incidents involving Plaintiff and Defendants Hollifield, Sale, and Mace.

137.    Defendant Spruce Pine and Defendant Cook chose not to investigate the incident involving Plaintiff or otherwise discipline any of the officers involved.

138.    Defendant Cook and Spruce Pine owed a duty and were required to ensure all the agents and employees under their command and control followed all applicable state and federal laws regarding use of force.

139.    Had Defendant Cook or Spruce Pine investigated the incident, they would have discovered that the Defendant-Officers did not follow all applicable state and federal laws regarding use of force. Rather, the force used on Plaintiff was excessive and unwarranted under the circumstances.

### *Police Department Rules Are Inadequate and Outdated*

140.    Upon information and belief, a document titled "Rules and Regulations of the Spruce Pine Police Department" was adopted as official police department policy on or about November 1, 1991 ("Rules").

141.    The Rules have not been amended or modified in any substantial way since 1991.

142.    The Rules constitute the official policy of the Police Department.

143.    The Mission Statement of the Spruce Pine Police Department as set out in Section 1 of its 1991 Rules states:
The mission of the Spruce Pine Police Department shall be to provide a safe environment in which residents and non residents can live, work, and play. This mission shall be accomplished by the prompt but fair enforcement of local and state laws. It shall be the policy of the Spruce Pine Policy Department to provide honest, fair, and efficient law enforcement to all people within its jurisdiction.

144.    The Mission Statement of the Spruce Pine Police Department also appears on the website of the Town of Spruce Pine. It states:
Spruce Pine Police Department members shall strive to accomplish this mission while upholding constitutional rights and exercising fair and

14

courteous treatment to everyone. Our mission is to provide quality law enforcement and public safety services to our community. We will protect the rights of all under the established laws by maintaining order, forming partnerships with the community, and preserving human dignity.

145. The Rules contain the following sections:

   a. Section 1: Authorization (including a mission statement);

   b. Section 2: Employment Criteria;

   c. Section 3: The Uniform and Personal Appearance;

   d. Section 4: Departmental Property and Equipment;

   e. Section 5: Public Affairs;

   f. Section 6: General Rules and Responsibilities (including Standards of Conduct; Competence; Knowledge of Laws and Regulations; False Statements, Perjury, Signing of False Official Statement or Reports, Failure to Make Reports);

   g. Section 7: General Conduct on Duty;

   h. Section 8: Grievance Procedure;

   i. Section 9: Procedures for High Pursuit Driving and Emergency Response;

   j. Section 10: Drug Testing Policy;

   k. Section 11: Standard Operating Procedure for Use of Force (including a "Use of Force Form"); and

   l. Body Armor Policy (potentially added at a later date).

146. The Rules do not contain a section or guidance regarding tasers, rendering medical aid, or how to respond to diabetic shock or similar medical conditions.

147. The Rules contain a section regarding use of force, but that section has not been updated, improved, or amended since 1991 to include updated law or best practice or industry custom, tradition, or standards.

148. The Rules contain a subsection titled "Knowledge of Laws and Regulations," which states:

   Each member is required to establish and maintain a working knowledge of laws and ordinances applicable to the Town of Spruce Pine, the rules and regulations and policies of the Spruce Pine Police Department, and the orders of the Department and components thereof. In the event of discipline or violation of some rule, regulation, order, procedure or other duty, it will be presumed that the officer was familiar with the law, rule or policy in question.

15

149. The law, as well as reasonable and professional standards and policies for law enforcement agencies, have changed in substantial and dramatic ways since 1991.

150. The Spruce Pine Police Department has failed to update its Rules to incorporate and reflect current law and standards regarding use of force, standards of practice and required policy and procedure regarding law enforcement.

151. The original TASER was introduced to law enforcement in 1974.

152. Police departments first began widespread use of tasers in the early 1990's.

153. The Spruce Pine Police Department has been using tasers for over a decade.

154. Spruce Pine police officers were issued tasers and allowed to carry them and use them in the field without receiving a taser policy or annual training in the use of tasers.

155. As a result of Defendants' actions, Plaintiff has incurred medical expenses and suffered physical, mental, emotional, and reputational harm.

156. The named Defendants owed a duty to the Plaintiff to follow all policies and procedures of the Spruce Pine Police Department and failed to do so.

## CAUSES OF ACTION

## CLAIMS AGAINST INDIVIDUAL DEFENDANTS

### COUNT ONE: Excessive Force Pursuant to 42 U.S.C. § 1983
### (Striking by Defendant Sale)

157. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set out herein.

158. Defendant Sale was acting under the color of state law as a Spruce Pine police officer during his conduct on February 16, 2024, involving the Plaintiff.

159. Defendant Sale was obligated to follow all applicable state and federal law concerning use of force.

160. Defendant Sale was a police officer for the Spruce Pine Police Department, clothed with his police uniform, gun and badge, and on-duty responding to a 911 call requesting a "welfare check".

161. At all times relevant, as a police officer acting under color of law, Defendant Sale was required to obey the laws of the United States and the State of North Carolina.

16

162. In violation of Plaintiff's clearly established right to be free from unreasonable search and seizures, Defendant Sale chose to use unlawful force against Plaintiff and to strike, hit, and/or punch Plaintiff no less than eleven (11) times.

163. Defendant Sale's conduct in striking, hitting, and/or punching Plaintiff lacked any lawful basis.

164. Plaintiff did not pose a physical threat of harm to anyone at the time and was incapable of resisting or fleeing.

165. It is well-settled law, policy, custom, and tradition that police officers do not brutally beat and humiliate someone in medical distress.

166. Under the totality of the circumstances, Defendant Sale's actions were objectively unreasonable and constituted excessive force.

167. Defendant Spruce Pine's policies, procedures, protocols, and customs, whether written, unwritten, or *de facto*, are to blame for this unlawful use of excessive force.

168. Defendant Sale's conduct violated Plaintiff's rights guaranteed by the United States Constitution, including his right under the Fourth Amendment to be secure in his person against unreasonable searches and seizures, and his right under the Fourteenth Amendment to due process of law, and are in violation of 42 U.S.C. § 1983.

   a. Defendant Sale knew or should have known that Plaintiff was in medical distress and did not pose a threat to the safety of Defendant-Officers or the public.

   b. Defendant Sale nevertheless assisted in forcibly removing Plaintiff from the vehicle and throwing him to the ground.

   c. Defendant Sale used force to restrain Plaintiff on the ground.

   d. Defendant Sale repeatedly applied excessive force to the Plaintiff on February 16, 2024, by striking, hitting, and/or punching him no less than eleven (11) times.

   e. Defendant Sale pinned Plaintiff to the ground while Defendant Hollifield tased Plaintiff.

   f. Defendant Sale's actions were malicious, willful, and wanton, and were taken in reckless disregard of and deliberate indifference to Plaintiff's welfare and constitutionally protected rights.

169. Defendant Sale chose to engage in the beating and unlawful treatment of the Plaintiff in violation of his training, applicable law, current best practices and traditions, and common sense.

17

170. At the time of the abusive assault and violation of the Plaintiff's constitutional rights, Plaintiff's rights as they relate to the allegations set forth herein were clearly established by the federal and state courts, case law, and applicable statutes.

    a. Based on his in-service training, prior and current case law, and current events, Defendant Sale knew or should have known his use of force was not lawful.

    b. At all times relevant, Defendant Sale's use of force was unreasonable and contrary to any meaningful government interest.

171. As a direct and proximate result of these unlawful actions, Plaintiff suffered severe physical, psychological, and emotional harm and is entitled to recover damages from Defendant Sale in his individual capacity.

### COUNT TWO: Excessive Force Pursuant to 42 U.S.C. § 1983
### (Taser Use by Defendant Hollifield)

172. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set out herein.

173. Defendant Hollifield was acting under the color of state law as a Spruce Pine police officer during his conduct on February 16, 2024, toward and involving the Plaintiff, and Defendant Hollifield was obligated to follow all applicable state and federal law concerning use of force.

174. Defendant Hollifield was a police officer for the Spruce Pine Police Department, clothed with his police uniform, gun and badge, and on-duty responding to a 911 call requesting a welfare check.

175. At all times relevant, as a police officer acting under color of law, Defendant Hollifield was required to obey the laws of the State of North Carolina and United States.

176. In violation of Plaintiff's clearly established right to be free from unreasonable search and seizures, Defendant Hollifield chose to use unlawful force against Plaintiff and tase Plaintiff without any lawful basis and with the knowledge that he was using a potentially deadly weapon, i.e. a taser, on a person who did not pose a physical threat to anyone at the time.

177. Plaintiff was incapable of resisting or fleeing.

178. It is well-settled law, policy, custom, and tradition that police officers do not brutally tase and humiliate someone in medical distress.

179. Under the totality of the circumstances, Defendant Hollifield's action was objectively unreasonable and constituted excessive force.

18

180. Defendant Spruce Pine's policies, procedures, protocols, and customs, whether written, unwritten, or *de facto*, are to blame for this unlawful use of excessive force.

181. Defendant Hollifield's conduct violated Plaintiff's rights guaranteed by the United States Constitution, including his right under the Fourth Amendment to be secure in his person against unreasonable searches and seizures, and his right under the Fourteenth Amendment to due process of law, and are in violation of 42 U.S.C. § 1983.

   a. Defendant Hollifield knew or should have known that Plaintiff was in medical distress and did not pose a threat to the safety of Defendant-Officers or the public.

   b. Defendant Hollifield nevertheless assisted in forcibly removing Plaintiff from the vehicle and throwing him to the ground.

   c. Defendant Hollifield used force to restrain Plaintiff on the ground.

   d. Defendant Hollifield pinned Plaintiff to the ground while Defendant Sale punched Plaintiff.

   e. Defendant Hollifield repeatedly applied excessive force to the Plaintiff on February 16, 2024, by deploying his taser onto the Plaintiff in drive stun mode two times to inflict pain on the Plaintiff.

   f. Defendant Hollifield's actions were malicious, willful, and wanton, and were taken in reckless disregard of and deliberate indifference to Plaintiff's welfare and constitutionally protected rights.

182. Defendant Hollifield chose to engage in the beating, tasing, and unlawful treatment of the Plaintiff in violation of his training, applicable law, current best practices and traditions, and common sense.

183. At the time of the abusive assault and violation of the Plaintiff's constitutional rights, Plaintiff's rights as they relate to the allegations set forth herein were clearly established by the federal and state courts, case law, and applicable statutes.

   a. Based on his in-service training, prior and current case law, and current events, Defendant Hollifield knew or should have known his use of force was not lawful.

   b. At all times relevant, as stated in the allegations herein, Defendant Hollifield's use of force was unreasonable and contrary to any meaningful government interest.

184. As a direct and proximate result of these unlawful actions, Plaintiff suffered severe physical, psychological, and emotional harm and is entitled to recover damages from Defendant Hollifield in his individual capacity.

19

## COUNT THREE: Excessive Force Pursuant to 42 U.S.C. § 1983
### (Use of Force by Defendant Mace)

185. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set out herein.

186. Defendant Mace was acting under the color of state law as a Spruce Pine police officer during his conduct on February 16, 2024, toward and involving the Plaintiff.

187. Defendant Mace was obligated to follow all applicable state and federal law concerning use of force.

188. Defendant Mace was a police officer for the Spruce Pine Police Department, clothed with his police uniform, gun and badge, and on-duty responding to a 911 call requesting a welfare check.

189. At all times relevant, as a police officer acting under color of law, Defendant Mace was required to obey the laws of the State of North Carolina and United States.

190. In violation of Plaintiff's clearly established right to be free from unreasonable search and seizures, Defendant Mace chose to use unlawful physical force against Plaintiff without any lawful basis.

191. Plaintiff did not pose a physical threat of harm to anyone at the time and was incapable of resisting or fleeing.

192. It is well-settled law, policy, custom, and tradition that police officers do not brutally beat and humiliate someone in medical distress.

193. Under the totality of the circumstances, Defendant Mace's actions were objectively unreasonable and constituted excessive force.

194. Defendant Spruce Pine's policies, procedures, protocols, and customs, whether written, unwritten, or *de facto*, are to blame for this unlawful use of excessive force.

195. Defendant Mace's conduct violated Plaintiff's rights guaranteed by the United States Constitution, including his right under the Fourth Amendment to be secure in his person against unreasonable searches and seizures, and his right under the Fourteenth Amendment to due process of law, and are in violation of 42 U.S.C. § 1983.

   a. Defendant Mace knew or should have known that Plaintiff was in medical distress and did not pose a threat to the safety of Defendant-Officers or the public.

   b. Defendant Mace nevertheless assisted in forcibly removing Plaintiff from the vehicle and throwing him to the ground.

20

c. Defendant Mace used force to restrain Plaintiff on the ground.

d. Defendant Mace pinned Plaintiff to the ground while Defendant Sale struck Plaintiff and while Defendant Hollifield tased Plaintiff.

e. Defendant Mace's actions were malicious, willful, and wanton, and were taken in reckless disregard of and deliberate indifference to Plaintiff's welfare and constitutionally protected rights.

196. Defendant Mace chose to engage in the beating and unlawful treatment of the Plaintiff in violation of his training, applicable law, current best practices and traditions, and common sense.

197. At the time of the abusive assault and violation of the Plaintiff's constitutional rights, Plaintiff's rights as they relate to the allegations set forth herein were clearly established by the federal and state courts, case law, and applicable statutes.

a. Based on the in-service training, prior and current case law, and current events, Defendant Mace knew or should have known his use of force was not lawful.

b. At all times relevant, Defendant Mace's use of force was unreasonable and contrary to any meaningful government interest.

198. As a direct and proximate result of these unlawful actions, Plaintiff suffered severe physical, psychological, and emotional harm and is entitled to recover damages from Defendant Mace in his individual capacity.

**COUNT FOUR: Bystander Liability for Excessive Force Pursuant to 42 U.S.C. § 1983**
**(Hollifield as bystander to the striking; Sale as bystander to the tasing;**
**and Mace as bystander to both the striking and tasing)**

199. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set out herein.

200. Defendants Hollifield, Sale, and Mace were acting under color of state law as Spruce Pine police officers during their conduct on February 16, 2024, toward the Plaintiff.

201. Each Defendant was obligated to follow all applicable state and federal law concerning use of force and their obligations as bystanders.

202. Defendants Hollifield, Sale, and Mace were police officers for the Spruce Pine Police Department, clothed with their police uniforms and badges, and on-duty responding to a 911 call requesting a welfare check.

21

203. At all times relevant, Hollifield, Sale, and Mace were present during the brutal assault of Plaintiff and had the ability to stop the other(s) and report the other(s) to Defendant Cook.

204. Defendants Hollifield and Mace each observed Defendant Sale repeatedly strike the Plaintiff while Plaintiff was in medical distress, on the ground, and subdued by multiple officers.

205. Defendants Hollifield and Mace each knew the excessive force used by Defendant Sale was violating the Plaintiff's constitutionally protected rights.

    a. Defendants Hollifield and Mace each knew that Walmart had called 911 for a welfare check on Plaintiff because he was unable to verbally communicate.

    b. Defendants Hollifield and Mace each had an opportunity to clearly observe the Plaintiff and the Plaintiff's symptoms of diabetic shock.

    c. Defendants Hollifield and Mace knew or should have known that Plaintiff was in medical distress, was not committing a crime, and did not pose a threat to any of the Defendant-Officers or the public.

    d. It is well-settled law, policy, custom, and tradition that police officers do not brutally beat, tased, and humiliate someone in medical distress.

    e. A reasonable officer in Defendant Hollifield's or Defendant Mace's position would have known that no amount of force – let alone at least eleven strikes with a closed fist – against Plaintiff was reasonable under the circumstances.

206. Defendants Hollifield and Mace each had an opportunity and means to prevent and stop the use of this excessive force.

207. Defendants Hollifield and Mace stood by as Sale attempted to effectuate an arrest of the Plaintiff, who was an unresponsive and debilitated citizen.

208. Defendant Hollifield, as a police captain and a superior officer to Defendant Sale, could have directed Defendant Sale not to strike the Plaintiff.

209. Defendants Hollifield and Mace chose to take no action to prevent or stop the excessive force from being used on Plaintiff.

210. Defendants Sale and Mace each observed Defendant Hollifield use a taser on Plaintiff multiple times while Plaintiff was in medical distress, was on the ground, and was subdued by multiple officers.

211. Defendants Sale and Mace each knew the excessive force used by Defendant Hollifield was violating the Plaintiff's constitutionally protected rights.

   a. Defendants Sale and Mace each knew that Walmart had called 911 for a "welfare check" on Plaintiff because he was unable to verbally communicate.

   b. Defendants Sale and Mace each had an opportunity to clearly observe the Plaintiff and the Plaintiff's symptoms of diabetic shock.

   c. Defendants Sale and Mace knew or should have known that Plaintiff was in medical distress, was not committing a crime, and did not pose a threat to any of the Defendant-Officers or the public.

   d. It is well-settled law, policy, custom, and tradition that police officers do not brutally beat, tased, and humiliate someone in medical distress.

   e. A reasonable officer in Defendant Sale's or Defendant Mace's position would have known that no amount of force – let alone deployment of a taser twice – against Plaintiff was reasonable under the circumstances.

212. Defendants Sale and Mace each had an opportunity and means to prevent and stop the use of this excessive force.

213. Defendants Sale and Mace stood by as Hollifield attempted to effectuate an arrest of the Plaintiff, who was an unresponsive and debilitated citizen.

214. Defendants Sale and Mace chose to take no action to prevent or stop the excessive force from being used on Plaintiff.

215. During the course of their interaction with Plaintiff, no Defendant-Officer ever stopped engaging with the other Defendant-Officers to prevent and stop the use of excessive force.

   a. At no time during the interaction did any Defendant-Officer stop the other Defendant-Officers and advise them their conduct was not in compliance with their training.

   b. At no time during the interaction did any Defendant-Officer stop the other Defendant-Officers and advise them that their conduct was unlawful.

   c. Instead, all Defendant-Officers chose to engage in the beating, tasing, and unlawful treatment of the Plaintiff in violation of their training, applicable law, current best practices and traditions, and common sense.

   d. During and after their encounter with Plaintiff, not one Defendant-Officer ever reported the other Defendant-Officers to Defendant Cook to inform him of their

23

firsthand observations of the violations of law and/or violations of training involving the interaction with the Plaintiff.

216. At the time of the abusive assault and violation of the Plaintiff's constitutional rights, Plaintiff's rights as they relate to the allegations set forth herein were clearly established by the federal and state courts, case law, and applicable statutes.

    a. Based on the in-service training, prior and current case law, and current events, the Defendant-Officers knew or should have known their use of force and failure to intervene to stop or prevent the use of force was not lawful.

    b. At all times relevant, each individual Defendant-Officer's use of force and failure to intervene was unreasonable and contrary to any meaningful government interest.

217. The inaction of Defendants Hollifield, Sale, and Mace were malicious, willful, and wanton, and taken in reckless disregard of and deliberate indifference to Plaintiff's welfare and constitutionally protected rights.

218. As a direct and proximate result of these unlawful actions, Plaintiff suffered severe physical, psychological, and emotional harm.

219. Plaintiff is entitled to recover damages from each of the Defendant-Officers in their individual capacities.

**COUNT FIVE: Failure to Render Medical Aid Pursuant to 42 U.S.C. § 1983**
**(Defendants Hollifield, Sale, and Mace)**

220. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set out herein.

221. Defendants Hollifield, Sale, and Mace were acting under color of state law as Spruce Pine police officers during their conduct on February 16, 2024, involving the Plaintiff Each Defendant-Officer was obligated to follow all applicable state and federal law concerning rendering or obtaining medical aid.

222. Defendants Hollifield, Sale, and Mace were police officers for the Spruce Pine Police Department, clothed with their police uniforms and badges, and on-duty responding to a 911 call requesting a welfare check.

223. Plaintiff's state of diabetic shock was a medical condition that posed a substantial risk of serious harm to Plaintiff.

224. Plaintiff's diabetes was a diagnosed condition and his diabetic shock and the symptoms that Plaintiff displayed were such that even a lay person would easily recognize that Plaintiff urgently needed medical attention.

225. Defendants Hollifield, Sale, and Mace each clearly observed Plaintiff's condition and that he was unable to communicate.

226. Defendants Hollifield, Sale, and Mace each knew or should have known that Plaintiff had a medical condition that posed a substantial risk of serious harm to Plaintiff if left untreated.

227. Defendants Hollifield, Sale, and Mace intentionally, knowingly, or recklessly failed to act appropriately to address the risk to Plaintiff that his condition posed by failing to render medical assistance to or obtain medical assistance for the Plaintiff.

   a. Defendants Hollifield, Sale, and Mace were aware that Plaintiff was non-responsive and they should have been aware that Plaintiff needed medical assistance.

   b. Defendant-Officers did not render first aid to the Plaintiff during the interactions in the Walmart parking lot.

   c. Defendant-Officers at no time contacted Emergency Medical Services for the Plaintiff.

   d. Defendant-Officers did not transport Plaintiff to a hospital, health clinic, or other facility to receive medical care before transporting him to the Spruce Pine Police Department.

   e. Not one Defendant-Officer, after knowing the Plaintiff had been tased and repeatedly struck, ever called for or provided medical assistance based on the beating, tasing, or medical crisis.

   f. National best practice, policy and procedure require a person to be seen by a medical provider after being tased, beaten, or experiencing a medical crisis.

   g. By failing to render medical assistance to Plaintiff at any point during their interaction with him, Defendants Hollifield, Sale, and Mace failed to follow their in-service training that had been completed within the past year.

   h. By failing to call for medical assistance for the Plaintiff at any point during their interaction with him, Defendants Hollifield, Sale, and Mace failed to follow their in-service training that had been completed within the past year.

   i. It is well-settled law, policy, custom, and tradition that police officers must provide medical assistance to individuals in medical distress and must provide medical assistance to individuals they have tased.

228. The Defendant-Officers conduct violated Plaintiff's rights guaranteed by the United States Constitution, including his right under the Fourteenth Amendment to be free from deliberate indifference to his serious medical need.

229. At the time of the Defendant-Officers' conduct, Plaintiff's rights as they relate to the allegations set forth herein were clearly established by the federal and state courts, case law, and applicable statutes.

   a. Based on the in-service training, prior and current case law, and current events, the Officer-Defendants knew or should have known their failure to render or obtain medical aid for Plaintiff was not lawful.

   b. At all times relevant, the individual Defendant's conduct was unreasonable and contrary to any meaningful government interest.

230. The actions and inactions of Defendants Hollifield, Sale, and Mace were malicious, willful, and wanton, and were taken in reckless disregard of and deliberate indifference to Plaintiff's welfare and constitutionally protected rights.

231. As a direct and proximate result of these unlawful actions, Plaintiff suffered severe physical, psychological, and emotional harm.

232. Plaintiff is entitled to recover damages from each of the Defendant-Officers in their individual capacities.

## COUNT SIX: Gross Negligence
### (Defendants Hollifield, Sale, and Mace)

233. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set out herein.

234. Each Defendant-Officer had an obligation to perform their respective duties in conformity to a standard of conduct of reasonable prudent and professional law enforcement officers under similar circumstances.

235. The Defendant-Officers owed Plaintiff a duty of care to act lawfully toward Plaintiff, conduct themselves as professional and competent law enforcement officers, and refrain from violating Plaintiff's constitutionally protected rights.

236. Defendants Hollifield, Sale, and Mace breached their duty to the Plaintiff in at least the following ways by failing to exercise the degree of care needed to uphold and avoid the violation of Plaintiff's constitutionally protected rights:

   a. The Defendant-Officers failed to recognize that the Plaintiff was undergoing a medical emergency, despite the clear indications that Plaintiff was in a state of diabetic shock.

b. Defendant-Officers did not render first aid to the Plaintiff during the interactions in the Walmart parking lot.

c. The Defendant-Officers at no time contacted Emergency Medical Services for the Plaintiff.

d. The Defendant-Officers did not transport Plaintiff to a hospital, health clinic, or other facility to receive medical care before transporting him to the Spruce Pine Police Department.

e. The Defendant-Officers instead applied physical force to Plaintiff to remove him from the vehicle, throw him to the ground, restrain him, strike him at least eleven times, and tase him twice.

f. Not one of the Defendant-Officers, after knowing the Plaintiff had been tased and repeatedly struck, ever called for or provided medical assistance based on the beating, tasing, or medical crisis.

237. The Defendant-Officers' breaches were malicious, willful, and wanton, and were taken in reckless disregard of and deliberate indifference to Plaintiff's welfare and constitutionally protected rights.

238. The Defendant-Officers knew or should have known and been aware that Plaintiff was experiencing a medical emergency and was not a threat to the Defendant-Officers' or the public's safety and that it would be a violation of Plaintiff's constitutional rights to use force against him as alleged.

239. It is foreseeable that law enforcement officers will encounter individuals experiencing medical emergencies.

240. A reasonably prudent law enforcement officer would have appropriately responded to an individual experiencing diabetic shock, as opposed to striking him, tasing him, using excessive force to arrest him, initiating criminal charges with no lawful basis, and continuing to maintain the legitimacy of those charges for months until ultimate dismissal by the prosecuting agency.

241. Defendants Hollifield's, Sale's, and Mace's breaches were the direct and proximate cause of harm to the Plaintiff.

242. As a direct and proximate result of these unlawful actions, Plaintiff suffered severe physical, psychological, and emotional harm.

243. Plaintiff is entitled to recover damages, jointly and severally, from the Defendant-Officers in their individual capacities.

27

**COUNT SEVEN: False Arrest Pursuant to 42 U.S.C. § 1983 and State Law**
**(Defendants Hollifield, Sale, and Mace)**

244. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set out herein.

245. Defendants Hollifield, Sale, and Mace seized the Plaintiff by detaining, beating, tasing, arresting, and criminally charging Plaintiff.

246. The Defendant-Officers had no probable cause to take these actions against Plaintiff.

247. Walmart employees called 911 to request a welfare check on the Plaintiff and had not asked him to leave the premises.

248. The facts and circumstances known to the Defendant-Officers would not lead a prudent officer, or one of reasonable caution, to believe that the Plaintiff had committed or was committing any offense.

249. The Defendant-Officers nevertheless unreasonably seized the Plaintiff in violation of his Fourth Amendment rights.

250. As a direct and proximate result of these unlawful actions, Plaintiff sustained reputational and financial damages, as well as severe physical, psychological, and emotional harm.

251. Plaintiff is entitled to recover damages, jointly and severally, from the Defendant-Officers in their individual capacities.

**COUNT EIGHT: Malicious Prosecution Pursuant to 42 U.S.C. § 1983 and State Law**
**(Defendants Hollifield, Sale, and Mace)**

252. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set out herein.

253. Defendants Hollifield, Sale, and Mace seized the Plaintiff by detaining, beating, tasing, arresting, and criminally charging Plaintiff.

254. The Defendant-Officers had no probable cause to take these actions against Plaintiff.

255. Walmart employees called 911 to request a welfare check on the Plaintiff and had not asked him to leave the premises.

256. The facts and circumstances known to Defendant-Officers would not lead a prudent officer, or one of reasonable caution, to believe that the Plaintiff had committed or was committing any offense.

257. The Defendant-Officers nevertheless initiated and continued criminal proceedings against the Plaintiff without probable cause in violation of his Fourth Amendment rights.

258. The criminal proceedings were terminated in the Plaintiff's favor when the Mitchell County District Attorney voluntarily dismissed all the charges against Plaintiff on 31 October 2024.

259. The Defendant-Officers acted with malice and other improper and unlawful purpose in charging and maintaining the criminal charges against the Plaintiff.

   a. The Defendant-Officers did not seek or request that the Plaintiff's criminal changes be dropped.

   b. The Defendant-Officers continued to assert and maintain that the criminal charges were proper, despite clear evidence that elements of the crimes could not be proven.

   c. Criminal charges remained outstanding against the Plaintiff for eight months.

   d. Criminal charges are public knowledge.

   e. While a criminal defendant is presumed innocent until proven guilty, criminal charges indicate to the public that there is at least some reasonable basis to believe that the criminal defendant could be guilty of the criminal conduct of which he is charged.

   f. The Defendants, as fellow law enforcement officers, were aware of the professional and reputational harm that criminal charges can bring on a law enforcement officer like the Plaintiff.

   g. Despite this knowledge, Defendants did not relent on their stance toward the criminal charges.

   h. Defendant Cook was proud of his officer's conduct.

260. As a direct and proximate result of these unlawful actions, Plaintiff sustained reputational and financial damages, as well as severe physical, psychological, and emotional harm.

261. Plaintiff is entitled to recover damages, jointly and severally, from the Defendant-Officers in their individual capacities.

## COUNT NINE: Battery
### (Defendants Hollifield, Sale, and Mace)

262. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set out herein.

263. Defendants Hollifield, Sale, and Mace each battered the Plaintiff by intentionally causing bodily contact with the Plaintiff that caused physical pain and injury.

264. The Plaintiff did not consent to the physical contact from the Defendant-Officers.

265. Being forcibly removed from his vehicle, thrown on the ground, restrained, struck, and tased caused the Plaintiff to suffer physical pain and injury in the form of bruises, scrapes, and abrasions.

266. As a direct and proximate result of these unlawful actions, Plaintiff suffered severe physical, psychological, and emotional harm.

267. Plaintiff is entitled to recover damages from Defendants Hollifield, Sale, and Mace, jointly and severally, in their individual capacities.

## COUNT TEN: Libel
### (Defendants Cook, Hollifield, Sale, and Mace)

268. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set out herein.

269. The individual Defendants made false statements of fact about the Plaintiff in that they falsely accused him of committing a criminal act.

   a. The individual Defendants caused the Plaintiff's name, picture and personal information and identification of him as being charged with criminal acts to be entered in CJLEADS when Defendants knew or should have known that such charges were not supported by probable cause.

   b. This CJLEADS information was available to law enforcement personnel throughout the state.

   c. The statements were clearly not the personal opinions of the individual Defendants.

   d. The statements were meant to be taken as factually true.

   e. The Plaintiff was identified as an individual to approach with caution, which implied he was possibly violent and dangerous.

30

f.  The statements made were *per se* libel, as they involved a criminal act and were made by the individual Defendants against the Plaintiff.

270.  The statements were defamatory in that they accused the Plaintiff of a crime and stated he was dangerous.

271.  Being accused of a crime is professionally harmful to a law enforcement officer such as Plaintiff.

272.  The individual Defendants were responsible for the defamatory statements.

273.  The individual Defendants made the defamatory statements with actual malice because they lacked probable cause to arrest or charge the Plaintiff and thus knew that their statements were false, acted with reckless disregard for the truth, or acted with a high degree of awareness of its probable falsity.

274.  A video of the brutal beating while the Plaintiff lay on the ground helpless and defenseless was aired on the local news station, WLOS-13, and was posted on the station's website that is accessible worldwide.

275.  The media reports stated that Plaintiff had been charged with one count of trespassing and three counts of resisting arrest.

276.  Portions of the video are still posted publicly to local news station WLOS-13's webpage.

277.  Upon information and belief, the full video is still present in the news station's archives as of the date of this filing.

278.  Upon information and belief, at the time the defamatory statements were made, the individual Defendants knew or should have known that the arrest of Plaintiff was unlawful and without probable cause.

279.  Charging the Plaintiff with a crime, identifying him in a statewide database available to law enforcement personnel as a dangerous person, and unlawfully accusing him of criminal conduct caused harm to Plaintiff personally, professionally, and legally as it related to his BLET certification.

280.  As a direct and proximate result of the individual Defendants' conduct, the Plaintiff's reputation and stature in the community was harmed.

a.  The Plaintiff experienced humiliation, both personally and professionally, and emotional distress.

b. The Plaintiff had to notify his chain of command of the incident and of the unlawful charges filed against him.

c. The Plaintiff was logged into the CJLEADS criminal records system and was flagged to approach with caution, indicating he could potentially be dangerous.

281. The defamatory statements prevented the Plaintiff from obtaining employment. Specifically, Plaintiff applied for a position with the Burke County Sheriff's Department, but was denied the job because of the published statements the individual Officers made about Plaintiff, including the notations in the CJLEADS system.

282. As a result of the individual Officers' actions and publication of defamatory statements, Plaintiff is entitled to recover damages from Cook, Hollifield, Mace, and Sale, jointly and severally, in their individual capacities.

## CLAIMS AGAINST TOWN OF SPRUCE PINE and DEFENDANT COOK

**COUNT ELEVEN: Lack of Policy (Taser) pursuant to 42 U.S.C. § 1983 and *Monell*
(Defendant Spruce Pine and Defendant Cook)**

283. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set out herein.

284. Defendant Spruce Pine and Defendant Cook are both a "person" as that term is used and defined pursuant to 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018 (1978), and its progeny.

285. Defendant Spruce Pine was required by law to ensure its departments followed all applicable state and federal law.

286. Defendant Spruce Pine was required to ensure police officers within its service were qualified and properly trained.

287. Defendant Spruce Pine has statutory authority pursuant to N.C. Gen. Stat. § 160A-289 to plan and execute training and development programs for the Police Department.

288. Defendant Cook, as the final policymaker for the Police Department and Spruce Pine, was responsible and accountable for ensuring that the Spruce Pine Police Department's Rules, as well as any other such policies and procedures, were up to date and conformed to and were lawful under the U.S. Constitution, federal laws, the North Carolina Constitution, North Carolina law, and any other applicable law, regulation, or legal requirement.

32

289. Defendant Cook as the Chief of Police, holds himself out as knowledgeable, experienced and capable of leading a police department.

290. Defendant Cook, as the final policymaker for Defendant Spruce Pine, can amend, modify, and/or expand the Rules at any time.

   a. Defendant Cook is authorized and empowered by the Town of Spruce Pine to create, maintain, and enforce all policies and training for police officers in his command.

   b. Defendant Cook has final policymaking authority for the Spruce Pine Police Department as authorized by the Town of Spruce Pine.

   c. Defendant Cook establishes, and is responsible and accountable for, policies regarding hiring, screening, training, monitoring, supervision, and discipline of officers of the Spruce Pine Police Department.

   d. Setting, modifying, and revoking the Spruce Pine Police Department's policies and procedures, including the Rules document, is within the course and scope of employment and official responsibility of Defendant Cook.

   e. It is the responsibility of Defendant Cook to ensure that Police Department policy is lawful, appropriate, sufficiently comprehensive, and up to the standards of modern and professional law enforcement organizations.

   f. Defendant Cook had a legal obligation to ensure his employees followed all state and federal law regarding use of force, use of tasers, and providing medical assistance to individuals in medical distress.

291. Defendant Spruce Pine's set of policies in the Rules has not been updated in any substantial way since 1991.

292. The policy contained no provisions regarding the use of tasers, when and when not to use them, how to use tasers safely, physical and medical risks of tasers, or any other similar detail.

293. The Defendants had a duty to follow current law, industry standards, in-service training, best practices, and lawful customs and traditions.

   a. The Defendants, based on the totality of the facts, allegations, and circumstances, set forth herein, chose not to follow current law.

   b. The Defendants, based on the totality of the facts, allegations, and circumstances set forth herein, chose not to follow their in-service training, best practices, and lawful customs and traditions.

33

294. The Spruce Pine Police Department, by and through its final policymaker Defendant Cook, maintained no official policy, for the use of tasers, and the lack thereof represents an outdated, improper, illegal, and unconstitutional technique for using and deploying tasers.

   a. Defendant Cook chose not to update the Spruce Pine Police Department's policies.

   b. Defendant Cook chose not to have a taser policy regarding the use of tasers by Spruce Pine Police Department.

   c. Defendant Cook chose not to have his employees comply with current best practices, policies, and standards.

   d. Defendant Cook chose not to train his officers annually on the use of tasers by the Spruce Pine Police Department as recommended by the manufacturer.

295. The original TASER was introduced to law enforcement in 1974.

   a. Police departments first began widespread use of tasers in the early 1990s.

   b. Upon information and belief, the Spruce Pine Police Department has been using tasers for decades.

296. Law enforcement agencies around the country have detailed written and explicit policies in place for use of force, use of tasers, and rendering of medical aid.

   a. Having and maintaining such policies is standard law enforcement practice.

   b. There is no reasonable explanation or justification for lacking a taser policy.

   c. Defendant Cook and Defendant Spruce Pine chose not to have a taser policy.

297. Defendant Cook chose not to modify or update the Police Department's Rules since becoming the Police Chief.

298. Defendant Cook failed to ensure that the Police Department's official policy was lawful, appropriate, and up to the standards of modern and professional law enforcement organizations.

299. Defendant Spruce Pine made a policy decision not to establish a taser policy to govern the Police Department's use of tasers.

   a. Defendant Cook made the decision that the Spruce Pine Police Department would not have a taser policy regarding the use of tasers, when and when not to use

them, how to use tasers safely, physical and medical risks of tasers, or any other similar detail.

b. This decision represents an affirmative act by a final policymaker of Defendant Spruce Pine.

c. Carrying and use of tasers without a policy governing their use was the persistent and widespread approach of the Spruce Pine Police Department, such that carrying and using tasers without any rules, regulations, or guidelines was their *de facto* policy approach.

300. A lack of such a policy is a deliberate and intentional policy choice by Defendant Cook, a final policymaker for and on behalf of Defendant Spruce Pine.

301. The widespread use of tasers by officers of the Police Department and the inherent risk that tasers pose to individuals against whom they are deployed makes the need for official written policy so obvious and the lack of a written policy so likely to result in the violation of constitutional rights as to constitute deliberate indifference by Defendants Spruce Pine and Cook.

a. There is no reasonable explanation or justification for failing to adopt a taser policy in 2024 when the Police Department has, upon information and belief, used tasers for decades.

b. Law enforcement agencies across North Carolina and the nation have taser policies to govern their use. This is now standard practice.

c. There are other law enforcement agencies in and around the Mitchell County area, as well as state and regionwide law enforcement associations that Defendant Cook could have contacted to obtain an example taser policy on which to model a policy for the Spruce Pine Police Department.

d. Despite providing no taser policy or training on a taser policy, Defendant Cook issued tasers to his officers, including Defendant Hollifield, to carry and use in the field.

e. Issuing a taser is a clear indication that Defendant Cook knew and authorized the use of tasers by his officers.

f. Defendant Cook clearly took these actions without bothering to put in place an appropriate and lawful policy.

g. Cook's failure to enact a policy represents a deliberate indifference to the constitutional rights, physical safety, and well-being of the community, including Plaintiff.

302. At all times relevant, Defendant Spruce Pine and Defendant Cook knew or should have known the Spruce Pine Police Department's policies were not up to date on best practices, custom, and tradition regarding use of tasers by the Police Department.

303. Defendant Cook was on notice, based on his in-service training in current law and his experience, of what best practice, policy and industry standards should have been.

304. Defendant Cook's in-service training and the taser manufacturer's annual update materials informed him of the need for established policy governing the use of tasers.

305. At all times relevant, Defendant Spruce Pine and Defendant Cook engaged in a policy of inaction, willful blindness, and deliberate ignorance for the purpose of saving money, obtaining and keeping officers at a lower wage, and to avoid spending money on a current, meaningful, useful, lawful policy as it relates to use of force, tasers, medical treatment, officer related bystander liability, training and supervision.

306. Plaintiff was deprived of his rights guaranteed under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable searches and seizures in that Defendant Hollifield, acting under color of law, used a taser on him two times without lawful reason or justification.

307. None of the Officer-Defendants acted as a reasonably trained officer would or should have, under the circumstances on February 16, 2024, had they been correctly trained, provided policy, and supervised accordingly.

308. But for the Defendant Spruce Pine's and Defendant Cook's failure to provide a taser policy, the Plaintiff would not have suffered a violation of his constitutional rights and the physical injury, mental and emotional damage and harm he endured due to the individual Defendants' use of the taser.

309. The lack of policy was the proximate cause of the deprivation of Plaintiff's constitutional rights and of Plaintiff's pain, harm, and damage.

310. The totality of the facts and circumstances surrounding the acts and omissions by the Defendants against the Plaintiff shocks the conscience and is in violation of custom, practice, standard, policy and procedure as well as federal, state and U.S. constitutional law, as it relates to the use of force, tasers, *Monell* causes of action and assisting individuals in medical crisis and distress.

311. If Defendant Spruce Pine had an adequate and sufficient policy for the use of tasers, Defendant Hollifield would not have used the taser as alleged in this Complaint in violation of Plaintiff's constitutionally protected rights.

312. Plaintiff's deprivation of rights and physical and mental injuries are the direct and proximate result of the lack of a taser policy by Defendant Spruce Pine.

313. Plaintiff is entitled to recover damages from Defendant Cook, in his individual and official capacities, and from The Town of Spruce Pine.

**COUNT TWELVE: Insufficient Policy (Medical Aid) pursuant to**
**42 U.S.C. § 1983 and *Monell***
**(Defendant Spruce Pine and Defendant Cook)**

314. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set out herein.

315. Defendant Cook, as the final policymaker for Defendant Spruce Pine, can amend, modify, and/or expand the Rules at any time.

   a. Defendant Cook is authorized and empowered by the Town of Spruce Pine to create, maintain, and enforce all policies and training for police officers in his command.

   b. Defendant Cook has final policymaking authority for the Spruce Pine Police Department as authorized by the Town of Spruce Pine.

   c. Defendant Cook establishes, and is responsible and accountable for, policies regarding hiring, screening, training, monitoring, supervision, and discipline of officers of the Spruce Pine Police Department.

   d. Setting, modifying, and revoking the Spruce Pine Police Department's policies and procedures, including the Rules document, is within the course and scope of employment and official responsibility of Defendant Cook.

   e. It is the responsibility of Defendant Cook to ensure that Police Department policy is lawful, appropriate, sufficiently comprehensive, and up to the standards of modern and professional law enforcement organizations.

   f. Defendant Cook had a legal obligation to ensure his employees followed all state and federal law regarding use of force, use of tasers, and providing medical assistance to individuals in medical distress.

316. The Rules contain a subsection titled "Knowledge of Laws and Regulations," which states:

   Each member is required to establish and maintain a working knowledge of laws and ordinances applicable to the Town of Spruce Pine, the rules and regulations and policies of the Spruce Pine Police Department, and the orders of the Department and components thereof. In the event of discipline or violation of some rule, regulation, order, procedure or other duty, it will be presumed that the officer was familiar with the law, rule or policy in question.

37

317. The law, as well as reasonable and professional standards and policies for law enforcement agencies, have changed in substantial and dramatic ways since 1991.

318. Defendant Spruce Pine's set of policies in the Rules has not been updated in any substantial way since 1991. The policy contained no detail on medical aid, when and how to render medical aid, how to recognize medical emergencies and the proper response thereto, necessary training on providing or obtaining medical aid, or any other similar detail.

319. Defendant Spruce Pine's Rules only mention medical aid in two places:

    a. "If the officer's use of force injures the prisoner or if there is a question as to the necessity for medical treatment, the prisoner is to be taken immediately to the closest hospital for examination and treatment as needed."

    b. "A police officer shall, where the use of tear gas or similar weapons has occurred, afford the affected individual prompt and thorough medical treatment."

320. Law enforcement agencies around the country have detailed written and explicit policies in place for rendering or obtaining medical aid to individuals in medical distress.

    a. Having and maintaining such policies is standard law enforcement practice.

    b. There is no reasonable explanation or justification for lacking a more robust medical aid policy, including one that specifically addressed how to respond to persons experiencing diabetic shock or other medical emergencies.

321. Defendant Cook failed to ensure that the Police Department's official policy was lawful, appropriate, and up to the standards of modern and professional law enforcement organizations.

322. Defendant Spruce Pine made a policy decision regarding medical aid.

    a. Defendant Cook chose not to have a policy for medical aid that addressed how the Spruce Pine Police Department should respond to persons experiencing diabetic shock or other medical emergencies.

    b. This decision represents an affirmative act by a final policymaker of Defendant Spruce Pine.

    c. Allowing police officers into the field on-duty without a policy on medical aid to persons experiencing medical emergencies was the persistent and widespread approach of the Spruce Pine Police Department, such that Defendants Hollifield, Sale, and Mace were unequipped, unprepared, and not competent to handle

38

medical emergencies like diabetic shock when encountered in the field, including the interaction with Plaintiff on February 16, 2024.

323. A lack of such a policy is a deliberate and intentional policy choice by Defendant Cook, a final policymaker for and on behalf of Defendant Spruce Pine.

324. The frequency with which officers of the Police Department encounter individuals in medical distress and in need of medical aid and the inherent risk that failing to have an effective medical aid policy poses to the citizens of Spruce Pine's constitutional right to be from deliberate indifference makes the need for official written policy so obvious and the lack of a written policy so likely to result in the violation of constitutional rights as to constitute deliberate indifference by Defendants Spruce Pine and Cook.

    a. Law enforcement agencies across North Carolina and the nation have medical aid policies to govern their actions and conduct when encountering persons suffering from a medical emergency. This is now standard practice.

    b. There are other law enforcement agencies in and around the Mitchell County area, as well as state and regionwide law enforcement associations that Defendant Cook could have contacted to obtain an example medical aid policy on which to model a policy for the Spruce Pine Police Department.

    c. Failure to do any of this represents a deliberate indifference to the constitutional rights, physical safety, and well-being of the community, including Plaintiff.

325. Defendant Cook was on notice, based on his in-service training in current law and his experience, of what best practice, policy and industry standards should have been.

326. Defendant Cook's in-service training informed him of the need for his department to have an established, detailed policy regarding medical aid.

327. Plaintiff was deprived of his rights guaranteed under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from deliberate indifference to a serious medical need when the Officer-Defendants, acting under color of law, failed to render or obtain medical aid in the first instance, and then subjected Plaintiff to unreasonable searches and seizures by tasing him two times and striking him at least 11 times without lawful reason or justification, and then failing to render or obtain medical aid for Plaintiff after he had been beaten and tased.

328. If Defendant Spruce Pine had an adequate and sufficient policy for medical aid, Defendants Hollifield, Sale, and Mace would have known and recognized that Plaintiff was experiencing a medical emergency, namely diabetic shock.

39

     a.   They would have rendered medical aid and/or alerted Emergency Medical Services to assist the Plaintiff.

     b.   They would not have used the taser and excessive hitting and striking as alleged in this Complaint in violation of Plaintiff's constitutionally protected rights.

329.    Plaintiff's deprivation is the direct and proximate result of the policy actions and omissions of Defendant Spruce Pine.

     a.   Defendant Spruce Pine, by and through the Spruce Pine Police Department and its ultimate and final policymaker, Defendant Cook, chose to have no policy in place for responding to medical emergencies.

     b.   This lack of policy directly led to the unreasonable and unlawful refusal and/or lack of medical aid offered by Defendants Hollifield, Sale, and Mace because they did not have a policy to follow, were not trained on a lawful policy, and had not received training on how to render medical aid and recognize health and medical emergencies in the field according to a lawful policy.

     c.   If Defendants Hollifield, Sale, and Mace had been provided a lawful medical aid policy to follow, they would not have been deliberately indifferent to Plaintiff's serious medical need.

330.    Plaintiff is entitled to recover damages from Defendant Cook, in his individual and official capacities, and from The Town of Spruce Pine.

**COUNT THIRTEEN: Insufficient Policy (Use of Force) pursuant to
42 U.S.C. § 1983 and *Monell*
(Defendant Spruce Pine and Defendant Cook)**

331.    Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set out herein.

332.    Defendant Spruce Pine's set of policies in the Rules and Regulations contained a section on use of force, including deadly and non-deadly force.

333.    Defendant Spruce Pine's section of the Rules document addressing use of force consists of merely four pages, exclusive of a one-page use of force form.

334.    The Rules section, addressing use of force has not been updated, improved, or amended since 1991 to include updated law or best practice or industry custom, tradition, or standards.

335.    The law, as well as reasonable and professional standards and policies for law enforcement agencies, have changed in substantial and dramatic ways since 1991. However, the Spruce Pine Police Department has failed to update its Rules.

336. The Rules contain a subsection titled "Knowledge of Laws and Regulations," which states:

> Each member is required to establish and maintain a working knowledge of laws and ordinances applicable to the Town of Spruce Pine, the rules and regulations and policies of the Spruce Pine Police Department, and the orders of the Department and components thereof. In the event of discipline or violation of some rule, regulation, order, procedure or other duty, it will be presumed that the officer was familiar with the law, rule or policy in question.

337. Defendant Spruce Pine's section regarding use of force does not incorporate current training, guidance by the courts, best practice as set forth in current case law, mandatory practice as set forth in current case law, application of modern policies, practices and procedures and proper post-use-of-force investigations, suspension, terminations and reporting to the Training Standards Commission.

338. The Spruce Pine Police Department, by and through its final policymaker Defendant Cook, maintained a policy or custom of deliberate indifference by failing to establish an appropriate use of force policy. The insufficiency of this policy represents an outdated, improper, illegal, and unconstitutional policy.

339. Law enforcement agencies around the country have detailed written and explicit policies in place for use of force.

    a. Having and maintaining such policies is standard law enforcement practice.

    b. There is no reasonable explanation or justification for lacking an updated use-of-force policy.

    c. Defendant Cook and Defendant Spruce Pine chose not to update the use-of-force policy.

340. Defendant Cook failed to ensure that the Police Department's official policy was lawful, appropriate, and up to the standards of modern and professional law enforcement organizations.

341. Defendant Spruce Pine made a policy decision regarding use of force.

    a. Defendant Cook made the decision that the Spruce Pine Police Department would have the use of force policy as set out in the Rules and Regulations document.

    b. This decision represents an affirmative act by a final policymaker of Defendant Spruce Pine.

41

c. Allowing police officers into the field on-duty without a policy on use of force was the persistent and widespread approach of the Spruce Pine Police Department. Defendants Hollifield, Sale, and Mace were unequipped, unprepared, and not competent to lawfully and properly use force in the field, including the interaction with Plaintiff on February 16, 2024.

342. An insufficient and deficient policy is a deliberate and intentional policy choice by Defendant Cook, a final policymaker for and on behalf of Defendant Spruce Pine.

343. The frequency with which officers of the Police Department encounter individuals in medical distress against whom no use of force is justified and the widespread use of force by officers of the Police Department and the inherent risks that a lack of an appropriate use-of-force policy pose to individuals in medical distress against whom force is used is so obvious and the lack of a written policy so likely to result in the violation of constitutional rights as to constitute deliberate indifference by Defendants Spruce Pine and Cook.

a. Law enforcement agencies across North Carolina and the nation have use of force policies to govern their actions and conduct, and this is now standard practice.

b. There are other law enforcement agencies in and around the Mitchell County area, as well as state and region wide law enforcement associations that Defendant Cook could have contacted to obtain an example use of force policy on which to model a policy for the Spruce Pine Police Department.

c. Despite a lack of a lawful and adequate use of force policy, Defendant Cook issued tasers to his officers, including Defendant Hollifield, to carry and use in the field. Defendant Cook clearly took these actions without bothering to put in place an appropriate and lawful policy.

d. Despite lacking a lawful and adequate use-of-force policy, Defendant Cook allowed and authorized his officers, including Defendant Sale, to use force in the field. Defendant Cook clearly took these actions without bothering to put in place an appropriate and lawful policy.

e. Failure to do any of this represents a deliberate indifference to the constitutional rights, physical safety, and well-being of the community, including Plaintiff.

344. Defendant Cook was on notice, based on his in-service training in current law and his experience, of what best practice, policy and industry standards should have been. For example, Defendant Cook's in-service training informed him of the need for an updated, comprehensive policy governing the use of non-deadly force.

345. Plaintiff was deprived of his rights guaranteed under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable searches and seizures in that the Defendant-Officers, acting under color of law, used a taser on him

two times and hit and struck him at least 11 times without lawful reason or justification when he should have been receiving emergency medical aid.

346. If Defendant Spruce Pine had an adequate and sufficient policy for use of force, Defendants Hollifield would not have tased Plaintiff, Defendant Sale would not have struck Plaintiff, and the Officer-Defendants would not have used unreasonable force to extract Plaintiff from the vehicle, throw him to the ground, and physically restrain him, as set out in the Complaint, in violation of his constitutional rights.

347. Plaintiff's deprivation is the direct and proximate result of the policy actions and omissions of Defendant Spruce Pine.

   a. Defendant Spruce Pine, by and through the Spruce Pine Police Department and its ultimate and final policymaker, Defendant Cook, chose the policy for use of force.

   b. This insufficient and deficient policy directly led to the unreasonable and unlawful use of force by Defendants Hollifield and Mace because they did not have an adequate policy to follow, were not trained on a lawful policy, and had not received training on how to use force according to a lawful policy.

   c. If Defendants Hollifield, Sale, and Mace had had a lawful use-of-force policy to follow, they would not have used the taser and struck the Plaintiff unlawfully, oppressively, and maliciously.

348. Plaintiff is entitled to recover damages from Defendant Cook, in his individual and official capacities, and from The Town of Spruce Pine.

**COUNT FOURTEEN: Inadequate Training and Supervision (Use of Force)**
**pursuant to 42 U.S.C. § 1983 and *Monell***
**(Defendant Spruce Pine and Defendant Cook)**

349. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set out herein.

350. Defendant Cook was responsible and accountable for the training and supervision of the employees of the Police Department, including Defendants Hollifield, Sale, and Mace.

351. Spruce Pine police officers were not regularly trained on the use of force by the Town of Spruce Pine or the Spruce Pine Police Department.

352. Even though the Spruce Pine Police Department had an antiquated use-of-force policy from 1991, police officers were not trained on the 1991 policy nor were they trained on updated techniques, methods, and laws on use of force since 1991.

353.    Defendants Hollifield, Sale, and Mace were not adequately trained in the use of force. Defendants were put on notice of best practices for the use of force during in-service training.

354.    Defendant Cook and Defendant Spruce Pine failed in this regard by enacting policies, whether written or unwritten, that demonstrate deliberate indifference to Plaintiff, thereby causing the herein complained-of harm suffered by Plaintiff, including one or more of the following failures:

    a.    Not properly training officers on the use of force;

    b.    Training and/or allowing officers to use excessive force on people who are being non-complaint or who are incapable of complying even if the person poses no physical threat;

    c.    Training and/or allowing officers to use excessive force without first activating their body-worn cameras;

    d.    Encouraging officers to act improperly without their body-worn cameras being activated specifically by failing to discipline those officers who fail to activate their body-worn cameras;

    e.    Training and/or encouraging and/or allowing officers to cover for each other instead of advising a supervisor of improper or unlawful police conduct, thereby encouraging officers to act unlawfully and improperly even when other officers are present.

355.    Defendant Spruce Pine made a policy decision regarding use of force training and supervision.

    a.    Defendant Cook made the decision that the Spruce Pine Police Department would not regularly train its officers on use of force like hitting and striking. This is evidenced by the training record of Defendants Hollifield, Sale, and Mace.

    b.    Defendant Cook made the decision that the Spruce Pine Police Department would not regularly supervise its officers' use of force like hitting and striking. This is evidenced by Defendant Cook's failure to discipline Defendants Hollifield, Mace, or Sale for their excessive use of force against Plaintiff.

    c.    These decisions represent an affirmative act by a final policymaker of Defendant Spruce Pine.

356.    Defendant Spruce Pine and Defendant Cook only require their officers to obtain Basic Law Enforcement Training ("BLET"), but not regular in-service training on non-deadly force like hitting and striking.

44

357. Defendant Spruce Pine and Defendant Cook did not regularly train their police officers on the lawful use of force, including non-deadly force of hitting and striking.

    a. Defendant Mace received one hour of training on Accountability and Use of Force Report Writing on August 1, 2023.

    b. Defendant Sale received 16 hours of training on De-Escalation and Documenting Use of Force on August 3, 2023.

    c. Defendant Sale received one hour of training on Accountability and Use of Force Report Writing on October 29, 2023.

    d. Defendant Hollifield received four hours of training on Communication Skills with Persons in Crisis – De-Escalation Techniques on June 21, 2022.

    e. Defendant Hollifield received one hour of training on Accountability and Use of Force Report Writing on July 13, 2023.

    f. Defendant Hollifield received two hours of training on Recognizing Assaultive Behaviors on July 27, 2023.

    g. Defendant Hollifield received four hours of training in S.C.A.T. Ground Fighting on June 17, 2010.

    h. Upon information and belief, Defendants Hollifield, Sale, and Mace did not receive any other or further training regarding use of force as related to hitting and striking.

358. The training that Defendants Hollifield, Sale, and Mace received was inadequate because it did not contain sufficient instruction on the use of non-deadly force or the impropriety of using any force against an individual in medical distress who poses no threat to the officers or the public.

359. Defendant Cook and Defendant Spruce Pine were informed and made aware of the February 16 incident involving Plaintiff and Defendants Hollifield, Sale, and Mace.

360. Defendant Spruce Pine and Defendant Cook chose not to investigate the incident involving Plaintiff or otherwise discipline any of the officers involved.

361. Defendant Spruce Pine and Defendant Cook were responsible and accountable for ensuring that all of Defendant Spruce Pine's police officers were adequately supervised, including by taking appropriate disciplinary action against officers who violate established use-of-force policies or applicable law.

45

a. Defendant Cook chose not to place any or all of the Defendants involved on administrative leave pending review or to otherwise discipline them for their actions and inactions on February 16, 2024, involving the Plaintiff.

b. Defendant Cook violated best practices, lawful customs and traditions, and standard law enforcement industry policy by failing to review, investigate, and discipline his employees.

c. Defendant Cook was proud of his employees' conduct and behavior and publicly released a letter in support of their acts and failures to act.

d. Defendant Cook chose not to investigate his employees' conduct relating to their interactions with the Plaintiff.

e. Defendant Cook chose not to ask the North Carolina SBI to investigate his employees' conduct relating to their interactions with the Plaintiff.

f. Defendant Cook knew or should have known that his employees' conduct violated their training, best practices, lawful customs and traditions, and standard law enforcement industry policy as it relates to the facts and circumstances as set forth herein.

362. By inaction, Defendant Cook and Defendant Spruce Pine chose to, and did in fact, by deed, act and behavior, endorse, sanction, and accept the actions and inactions of Defendants Hollifield, Sale, and Mace.

363. Defendant Cook chose to allow Defendants Hollifield, Sale, and Mace to continue acting as police officers and on behalf of the Spruce Pine Police Department during the 15 months that have elapsed between their unlawful treatment of Plaintiff and the filing of this Complaint.

364. The actions and inactions set forth above are further evidence of Defendants' inadequate policies – there was no follow-up whatsoever after an event involving use of force against a person experiencing a medical emergency.

365. By inaction, Defendant Spruce Pine and Defendant Cook chose to, and did in fact, by deed, act and behavior, endorse, sanction, and accept the actions and inactions of Defendants Hollifield, Sale, and Mace.

366. Defendant Cook chose to allow Defendants Hollifield, Sale, and Mace to continue acting as police officers and on behalf of the Spruce Pine Police Department, from the date of their interaction with the Plaintiff to the filing of this complaint – a period of approximately 15 months.

367. The Spruce Pine Police Department, by and through its final policymaker Defendant Cook, maintained an official policy or custom of failing to regularly train its police

46

officers on the use of force, which is an outdated, improper, illegal, and unconstitutional policy for use of force.

368. The Spruce Pine Police Department, by and through its final policymaker Defendant Cook, maintained an official policy or custom of deliberate indifference by failing to properly supervise its police officers when they use force against citizens.

369. A policy to not require regular use-of-force training, to not supervise its police officers when they use force against citizens, and to not conduct an investigation following a use-of-force incident is a deliberate and intentional policy choice by Defendant Cook, a final policymaker for and on behalf of Defendant Spruce Pine.

370. Upon information and belief, the lack of training and lack of supervision was a pattern and practice at Spruce Pine Police Department.

371. The unofficial policy and custom for use of force within the Spruce Pine Police Department was to allow use of force without regular or up-to-date training or any supervision.

372. The need for more or different training and supervision regarding the use of force is so obvious and the inadequacies in Defendants' existing training and supervision was so likely to result in the violation of Plaintiff's constitutional rights as to demonstrate deliberate indifference.

   a. There is no reasonable explanation or justification to lack regular use of force training in 2024.

   b. Law enforcement agencies across North Carolina and the nation regularly require their police officers to receive use of force training. This is now standard practice.

   c. Despite not requiring regular use of force training, Defendant Cook allowed officers like the Defendant-Officers to go on-duty and interact with the public as a law enforcement officer. Defendant Cook clearly took these actions without bothering to put in place an appropriate and lawful policy to ensure police officers like Defendant-Officers were trained on use of force beforehand.

   d. Failure to do any of this represents a deliberate indifference to the constitutional rights, physical safety, and well-being of the community, including Plaintiff.

373. Defendant Cook was on notice, based on his in-service training in current law and his experience, of what best practice, policy and industry standards should have been. For example, Defendant Cook's in-service training informed him of the need to train his officers on the use of non-deadly force and to appropriately supervise their use of non-deadly force.

47

374. Plaintiff was deprived of his rights guaranteed under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable searches and seizures in that the Defendant-Officers, acting under color of law, forcibly extracted him from his vehicle, threw him to the ground, punched him with a closed fist at least eleven (11) times, and pinned him to the ground while he was beaten and tased, all without lawful reason or justification.

375. If Defendant Spruce Pine and Defendant Cook had adequately and sufficiently trained their police officers on the use of force or supervised their officers' use of force, the Officer-Defendants would not have used excessive force as alleged in this Complaint in violation of Plaintiff's constitutionally protected rights.

376. Plaintiff's deprivation is the direct and proximate result of the policy actions and omissions of Defendant Spruce Pine.

377. Defendant Spruce Pine, by and through the Spruce Pine Police Department and its ultimate and final policymaker, Defendant Cook, chose to not regularly train police officers on the use of force like hitting and striking or to supervise officers' use of force.

    a. This policy directly led to the unreasonable and unlawful use of excessive force by the Officer-Defendants because they were not adequately and properly trained in the use of force on a regular basis.

    b. If the Defendant-Officers had been properly and adequately trained in the use of force, they would not have engaged in unlawful, oppressive, and malicious conduct by forcibly extracting Plaintiff from his vehicle, throwing him to the ground, hitting and striking him, or pinning him to the ground while he was beaten and tased.

378. Plaintiff is entitled to recover damages from Defendant Cook, in his individual and official capacities, and from The Town of Spruce Pine.

**COUNT FIFTEEN: Inadequate Training and Supervision (Taser) pursuant to**
**42 U.S.C. § 1983 and *Monell***
**(Defendant Spruce Pine and Defendant Cook)**

379. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set out herein.

380. Defendant Cook owed a duty and was required to ensure all the agents and employees under his command and control complied with all their in-service training.

381. Defendant Cook and Defendant Spruce Pine failed in this regard by enacting policies, whether written or unwritten, that demonstrate deliberate indifference to Plaintiff,

48

Case 1:25-cv-00165-MR-WCM    Document 1    Filed 06/05/25    Page 48 of 58

thereby causing the herein complained-of harm suffered by Plaintiff, including one or more of the following failures:

a. Not properly training officers on the use and dangers of tasers;

b. Training and/or allowing officers to tase people who are simply being non-complaint even if the person poses no physical threat;

c. Training and/or allowing officers to engage in tasing and other uses of force without first activating their body-worn cameras;

d. Encouraging officers to act improperly without their body-worn cameras being activated specifically by failing to discipline those officers who fail to activate their body-worn cameras;

e. Training and/or encouraging and/or allowing officers to cover for each other instead of advising a supervisor of improper or unlawful police conduct, thereby encouraging officers to act unlawfully and improperly even when other officers are present.

382. Defendant Spruce Pine made a policy decision regarding taser training.

a. Defendant Cook chose not to regularly train the Spruce Pine Police Department's officers on taser use. This is evidenced by the training record of Defendants Hollifield, Sale, and Mace.

b. Defendant Cook made the decision that the Spruce Pine Police Department would not regularly supervise its officers' use of tasers. This is evidenced by Defendant Cook's failure to discipline Defendant Hollifield for his use of a taser against Plaintiff.

c. This decision represents an affirmative act by a final policymaker of Defendant Spruce Pine.

d. Carrying and using tasers without adequate training or supervision was the persistent and widespread approach of the Spruce Pine Police Department such that carrying and use of tasers without any rules, regulations, or guidelines was their *de facto* policy approach.

383. Defendant Cook and Spruce Pine did not regularly train their police officers on carrying and using tasers.

384. Defendant Hollifield was inadequately trained to carry and use a taser.

a. Defendant Hollifield received four hours of Taser training on April 25, 2009.

49

b.  Defendant Hollifield received two hours of Taser training on June 14, 2012.

c.  Upon information and belief, Defendant Hollifield had received no further or other training on carrying and using a taser.

385.  Neither Defendant Sale nor Defendant Mace were adequately trained to carry and use a taser.

a.  Defendant Sale received training called "Taser 7" on November 8, 2021.

b.  Defendant Sale received two hours of taser training on November 16, 2022.

c.  Defendant Sale received taser training on October 2, 2023.

d.  Defendant Mace received eight hours of taser training on November 15, 2021.

e.  Upon information and belief, Defendants Sale and Mace received no further or other training in carrying and using a taser.

386.  The training that Defendants Hollifield, Sale, and Mace received was inadequate because it did not contain sufficient instruction on the use of tasers or the impropriety of using tasers against an individual in medical distress who poses no threat to the officers or the public.

387.  Defendant Cook was on notice, based on his in-service training in current law and his experience, of what best practice, policy and industry standards should have been.

388.  Defendant Cook's in-service training and the taser manufacturer's annual update materials informed him of the need for annual training in the use of tasers and to supervise his officers' use of tasers.

389.  Defendant Cook and Defendant Spruce Pine were informed and made aware of the February 16 incidents involving Plaintiff and Defendants Hollifield, Sale, and Mace.

390.  Defendant Spruce Pine and Defendant Cook chose not to investigate the incident involving Plaintiff or otherwise discipline any of the officers involved.

391.  Defendant Spruce Pine and Defendant Cook were responsible and accountable for ensuring that all of Defendant Spruce Pine's police officers were adequately supervised, including by taking appropriate disciplinary action against officers who misuse tasers.

a.  Defendant Cook chose not to place any or all of the Defendants involved on administrative leave pending review.

b. Defendant Cook violated best practices, lawful customs and traditions, and standard law enforcement industry policy by failing to review, investigate, and discipline his employees.

c. Defendant Cook was proud of his employees conduct and behavior and publicly released a letter in support of their acts and failures to act.

d. Defendant Cook chose not to investigate his employees' conduct as it relates to their interaction with Plaintiff.

e. Defendant Cook chose not to ask the North Carolina SBI to investigate his employees' conduct as it relates to their interactions with the Plaintiff.

f. Defendant Cook knew or should have known that his employees' conduct violated their training, best practices, lawful customs and traditions, and standard law enforcement industry policy as it relates to their interaction with the Plaintiff.

392. By inaction, Defendant Cook and Defendant Spruce Pine chose to, and did in fact, by deed, act and behavior, endorse, sanction, and accept the actions and inactions of Defendants Hollifield, Sale, and Mace.

393. Defendant Cook chose to allow Defendants Hollifield, Sale, and Mace to continue acting as police officers and on behalf of the Spruce Pine Police Department during the 15 months that have elapsed between their unlawful treatment of Plaintiff and the filing of this Complaint.

394. The Spruce Pine Police Department, by and through its final policymaker Defendant Cook, maintained an official policy and custom of deliberate indifference by failing to regularly train its police officers on the use of tasers, which is an outdated, improper, illegal, and unconstitutional policy for using and deploying tasers.

395. The Spruce Pine Police Department, by and through its final policymaker Defendant Cook, maintained an official policy and custom of deliberate indifference by failing to properly supervise its police officers when they use tasers against citizens.

396. A policy to not require regular taser training and not to supervise its police officers when they use tasers against citizens is a deliberate and intentional policy choice by Defendant Cook, a final policymaker for and on behalf of Defendant Spruce Pine.

397. Upon information and belief, the lack of training and lack of supervision was a pattern and practice at Spruce Pine Police Department.

398. The unofficial policy and custom for using tasers within the Spruce Pine Police Department was to use tasers without regular or up-to-date training and without appropriate supervision of officers' use of tasers.

51

399. The need for more or different use-of-force training and supervision is so obvious and the inadequacies in Defendants' existing training and supervision was so likely to result in the violation of Plaintiff's constitutional rights as to demonstrate deliberate indifference.

   a. There is no reasonable explanation or justification to lack regular taser training in 2024.

   b. Law enforcement agencies across North Carolina and the nation regularly require their police officers to receive taser training and certification on taser use. This is now standard practice.

   c. Despite not requiring regular taser training, Defendant Cook issued tasers to his officers, including Defendant Hollifield, to carry and use in the field. Issuing tasers is a clear indication that Defendant Cook knew and authorized the use of tasers by his officers. Defendant Cook clearly took these actions without bothering to put in place an appropriate and lawful policy or to supervise his officers' use of tasers.

   d. Failure to do any of these represents a deliberate indifference to the constitutional rights, physical safety, and well-being of the community, including Plaintiff.

400. Plaintiff was deprived of his rights guaranteed under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable searches and seizures in that Defendant-Hollifield, acting under color of law, used a taser on him two times without lawful reason or justification.

401. The Defendants' conduct violated the Plaintiff's rights as guaranteed and protected under the Fourteenth Amendment.

402. If Defendant Spruce Pine and Defendant Cook had adequately and sufficiently trained their police officers on the use of tasers and supervised their officers' use of tasers, Defendant Hollifield would not have used the taser as alleged in this Complaint in violation of Plaintiff's constitutionally protected rights.

403. Plaintiff's deprivation is a direct and proximate result of the policy actions and omissions of Defendant Spruce Pine.

404. Plaintiff is entitled to recover damages from Defendant Cook, in his individual and official capacities, and from The Town of Spruce Pine.

**COUNT SIXTEEN: Inadequate Training and Supervision (Rendering Medical Aid)
pursuant to 42 U.S.C. § 1983 and *Monell*
(Defendant Spruce Pine and Defendant Cook)**

405. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set out herein.

406. Defendant Cook owed a duty and was required to ensure all the agents and employees under his command and control complied with all their in-service training.

407. Defendant Cook and Defendant Spruce Pine failed in this regard by enacting policies, whether written or unwritten, that demonstrate deliberate indifference to Plaintiff, thereby causing the harm suffered by Plaintiff, including by not training officers on how to recognize or respond to medical emergencies;

408. Defendant Spruce Pine made a policy decision regarding medical aid training for police officers.

   a. Defendant Cook chose not to train the Spruce Pine Police Department's officers in how to respond to persons experiencing diabetic shock or other medical emergencies.

   b. This decision represents an affirmative act by a final policymaker of Defendant Spruce Pine.

   c. Allowing police officers into the field on-duty without medical aid training was the persistent and widespread approach of the Spruce Pine Police Department, such that Defendants Hollifield, Sale, and Mace were unequipped, unprepared, and not competent to handle medical emergencies like diabetic shock when encountered in the field, including the interaction with Plaintiff on February 16, 2024.

409. Defendant Mace was not certified in rendering medical aid, emergency medical aid, recognizing health emergencies or medical conditions, or basic first aid.

410. Defendant Sale was not certified in rendering medical aid, emergency medical aid, recognizing health emergencies or medical conditions, or basic first aid.

   a. Defendant Sale did receive three hours of CPR/AED training on October 2, 2023, and four hours on December 20, 2021.

   b. Defendant Sale did receive one hour of NARCAN training on October 2, 2023, September 29, 2022, and December 20, 2021.

   c. Defendant Sale did receive one hour of Bloodborne Pathogens training on October 2, 2023, September 29, 2022, and December 20, 2021.

53

d. None of the training specified above was relevant to diabetes, diabetic shock, or similar medical conditions or medical emergencies.

411. Defendant Hollifield was not certified in rendering medical aid, emergency medical aid, recognizing health emergencies or medical conditions, or basic first aid.

a. Defendant Hollifield did receive two hours of EMS Special Topics training on March 1, 2021.

b. Defendant Hollifield did receive four hours of training in Dealing with Epilepsy on June 14, 2012.

c. Upon information and belief, none of the training specified above was pertaining to diabetes, diabetic shock, or similar medical conditions or medical emergencies.

412. The training that Defendants Hollifield, Sale, and Mace received was inadequate because it did not contain sufficient instruction on rendering medical aid, emergency medical aid, recognizing health emergencies or medical conditions, basic first aid, or similar certifications.

413. The Spruce Pine Police Department, by and through its final policymaker Defendant Cook, maintained no official policy for medical aid training (and thus failed to train its officers in medical aid), and the lack thereof represents an outdated, improper, illegal, and unconstitutional policy.

414. Defendant Cook was on notice, based on his in-service training in current law and his experience, of what best practice, policy and industry standards should have been. For example, Defendant Cook's in-service training informed him of the need for more frequent and more detailed training regarding the identification of and response to medical emergencies and regarding when to obtain medical care for an individual against whom force was used.

415. Defendant Cook and Defendant Spruce Pine were informed and made aware of the February 16 incident involving Plaintiff and Defendants Hollifield, Sale, and Mace.

416. Defendant Spruce Pine and Defendant Cook chose not to investigate the incident involving Plaintiff or otherwise discipline or take any action against any of the officers involved for failing to render or obtain medical aid for the Plaintiff.

417. Defendant Spruce Pine and Defendant Cook were responsible and accountable for ensuring that all of Defendant Spruce Pine's police officers were adequately supervised, including by taking appropriate disciplinary action against officers who violate applicable law.

    a. Defendant Cook chose not to place any or all of the Defendants involved on administrative leave pending review.

    b. Defendant Cook violated best practices, lawful customs and traditions, and standard law enforcement industry policy by failing to review, investigate, and discipline his employees.

    c. Defendant Cook was proud of his employees' conduct and behavior and publicly released a letter in support of their acts and failures to act.

    d. Defendant Cook chose not to investigate his employees' conduct relating to their interactions with the Plaintiff.

    e. Defendant Cook knew or should have known that his employees' conduct violated best practices, lawful customs and traditions, and standard law enforcement industry policy as it relates to the facts and circumstances as set forth herein.

418. By inaction, Defendant Cook and Defendant Spruce Pine chose to, and did in fact, by deed, act and behavior, endorse, sanction, and accept the actions and inactions of Defendants Hollifield, Sale, and Mace.

419. Defendant Cook chose to allow Defendants Hollifield, Sale, and Mace to continue acting as police officers and on behalf of the Spruce Pine Police Department during the 15 months that have elapsed between their unlawful treatment of Plaintiff and the filing of this Complaint.

420. Upon information and belief, the lack of training and lack of supervision was a pattern and practice at Spruce Pine Police Department.

421. The failure to train officers in how to recognize and respond to medical emergencies is a deliberate and intentional policy choice by Defendant Cook, a final policymaker for and on behalf of Defendant Spruce Pine.

422. The inadequate training and supervision by Defendant Cook were or should have been obvious and apparent to Defendant Spruce Pine, such that the Town Manager or Town Alderman should have known or inquired regarding policy, training, supervision and termination of employees who did not follow the law or who violated the constitutional rights of the Plaintiff and or the community.

423. The need for more or different training and supervision regarding medical aid is so obvious and the inadequacies in Defendants' existing training and supervision was so likely to result in the violation of Plaintiff's constitutional rights as to demonstrate deliberate indifference.

a. Law enforcement officers regularly encounter individuals in medical distress who need medical aid.

b. There is no reasonable explanation or justification for not training the Police Department's officers in the handling of medical emergencies in 2024.

c. Law enforcement agencies across North Carolina and the nation have medical aid training policies that require regular training in identifying and responding to medical emergencies. This is now standard practice.

d. There are other law enforcement agencies in and around the Mitchell County area, as well as state and region-wide law enforcement associations that Defendant Cook could have contacted to obtain an example medical aid training policy on which to model a policy for the Spruce Pine Police Department.

e. Failure to do any of this represents a deliberate indifference to the constitutional rights, physical safety, and well-being of the community, including Plaintiff.

424. If Defendant Spruce Pine and Defendant Cook adequately trained their officers, Defendants Hollifield, Sale, and Mace would have known and recognized that Plaintiff was experiencing a medical emergency, namely diabetic shock, and would have rendered medical aid and/or alerted Emergency Medical Services to assist the Plaintiff. They would not have used the taser and excessive hitting and striking as alleged in this Complaint in violation of Plaintiff's constitutionally protected rights.

425. Plaintiff was deprived of his rights guaranteed under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from deliberate indifference to his serious medical needs when the Defendant-Officers, acting under color of law, failed to render or obtain medical care for Plaintiff when he was encountered in diabetic shock or after he had been beaten or tased.

426. Plaintiff's deprivation is a direct and proximate result of the policy actions and omissions of Defendant Spruce Pine.

a. Defendant Spruce Pine, by and through the Spruce Pine Police Department and its ultimate and final policymaker, Defendant Cook, chose not to train its officers in recognizing and responding to medical emergencies.

b. This lack of training directly led to the unreasonable and unlawful refusal and/or lack of medical aid offered to the Plaintiff by Defendants Hollifield, Sale, and Mace because they were not properly and sufficiently trained in medical aid and how to recognize health and medical emergencies in the field according to a lawful policy.

c. If Defendants Hollifield, Sale, and Mace had been properly trained on medical aid, they would not have unlawfully, oppressively, and maliciously failed to render or obtain medical aid for the Plaintiff.

427. Plaintiff is entitled to recover damages from Defendant Cook, in his individual and official capacities, and from The Town of Spruce Pine.

## COUNT SEVENTEEN: Punitive Damages
### (Defendants Cook, Hollifield, Sale, and Mace)

428. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set out herein.

429. Defendants, in each claim for relief, by their actions as set forth in this Complaint and on behalf of Defendant Spruce Pine, have acted intentionally, willfully, wantonly, and maliciously in causing the injuries complained-of herein.

430. By their intentional, willful, wanton, and malicious behavior, the listed Defendants have caused injuries to Plaintiff as set forth in this Complaint, including:

a. Violating his rights under the Constitutions of the United States and North Carolina;

b. As a direct and foreseeable consequence of Defendants' conduct, Plaintiff suffered damage and harm to his physical well-being and his life was placed at risk during a medical emergency;

c. As a direct and foreseeable consequence of Defendants' conduct, Plaintiff suffered reputational harm, monetary damages, pain and suffering, mental anguish, emotional trauma and distress.

431. The intentional, willful, wanton, malicious and oppressive conduct of the listed Defendants are the proximate cause of injuries sustained by the Plaintiff. As a result, the Plaintiff is entitled to punitive damages.

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff prays the Court:

1. For judgment in favor of the Plaintiff, with compensatory damages to be determined by the jury;

2. For punitive damages in an amount to be determined by the jury;

3.      For pre-judgment and post-judgment interest as allowed by law;

4.      For an award of attorney's fees and costs under 42 U.S.C. § 1988(b) and as otherwise allowed by law;

5.      For a trial by jury;

6.      For the Court to forward any judgment to the North Carolina Criminal Justice Education and Training Standards Commission; and

7.      For such other and further relief as the Court may deem just and proper.


This the 4th day of June, 2025.

/s/ David A. Wijewickrama
David A. Wijewickrama
N.C. State Bar No.: 30694
Law Office of David A. Wijewickrama, PLLC
95 Depot Street
Waynesville, NC 28786
Phone: 828-452-5801
Fax:    828-454-1990
davidwije17@yahoo.com

/s/ Susan H. Boyles
/s/ Whitney R. Pakalka
Susan H. Boyles N.C. Bar No.: 20877
Whitney R. Pakalka N.C. Bar No.: 52611
Kilpatrick Townsend & Stockton, LLP
1001 West Fourth Street
Winston-Salem, NC 27101
Phone: 336-607-7300
Fax: 336-607-7500
sboyles@ktslaw.com
wpakalka@ktslaw.com


*Attorneys for Plaintiff*